NCS MANAGEMENT CORPORATION
f/k/a Nationwide Collision Specialists,
Inc., Appellant,

v.

STERLING COLLISION CENTERS,
INC., Appellee.

No. 14–02–00777–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 29, 2003.

William B. Underwood, Houston, for appellant.

Scott A. Humphries, Houston, for appellee.

Panel consists of Justices HUDSON, EDELMAN and DRAUGHN.*

## OPINION

RICHARD H. EDELMAN, Justice.

In this suit over the sale of a business, NCS Management Corporation f/k/a Nationwide Collision Specialists, Inc. ("NCS") appeals a judgment in favor of Sterling Collision Centers, Inc. ("Sterling") on the grounds that: (1) Sterling failed to satisfy a condition precedent of the parties' contract; (2) the trial court improperly dismissed NCS's tort claims; (3) the appraisal upon which the judgment was based made an improper legal determination; and (4) the judgment failed to properly assess the cost of the appraisal. We affirm.

* Senior Justice Joe L. Draughn sitting by as-

## Background

In 1998, Sterling purchased an automobile repair shop from NCS. The consideration for this purchase included a promissory note (the "note") obligating Sterling to make five annual installment payments. However, the asset purchase agreement for the transaction (the "agreement") allowed the final four of these installment payments (the "payments") to be reduced if earnings for the first year following the sale (the "earnings") fell below a specified amount. The agreement also provided an appraisal procedure for the earnings to be determined independently if the parties could not agree.

After a dispute arose over whether Sterling was entitled to reduce the payments, NCS brought this suit, alleging only a claim for breach of contract. The trial court ordered the parties to follow the appraisal procedure set forth in the agreement, and the appraiser's report (the "report") found in favor of the reduction sought by Sterling. Following issuance of the report, NCS filed an amended petition, adding claims for fraud in the inducement and breach of fiduciary duty. Eight days later, the trial court entered a judgment ordering that: (1) "the parties have a judgment consistent with" the report; (2) costs of court be borne by the party incurring them; and (3) all other relief be denied.

## Timeliness of Reduction

■ NCS's first issue contends that Sterling failed to satisfy the provision of the agreement stating, "Within forty-five days after the first anniversary of the adjustment date [defined as the first day of the first calendar month following the Closing Date], the remaining payments due . . . shall be reduced. . . ." (the "45 day

signment.

provision").[1] NCS contends that this provision created a condition precedent, requiring Sterling to give notice of any proposed reduction within that 45 day period, and that Sterling's failure to do so precludes it from obtaining any reduction in the payments.

■■■ A condition precedent defines an event that must occur before a contract becomes effective or an obligation to perform arises. *Mass. Mun. Wholesale Elec. Co. v. Danvers,* 411 Mass. 39, 577 N.E.2d 283, 288 (1991).[2] If the condition is not fulfilled, the contract, or obligation attached to the condition, may not be enforced. *Id.* An intent to create a condition precedent, limiting or forfeiting rights under a contract, must be reflected either by emphatic words or other clear manifestation of such intent in the contract. *Id.*

NCS cites no authority in which a contract term similar to the 45 day provision has been held to constitute a condition precedent. Unlike the cases NCS cites,[3] in which recovery under insurance policies was expressly conditioned on timely notice or presentation of a claim by the insured, no right or remedy in the agreement is conditioned on the 45 day provision. Moreover, in light of other provisions of the agreement allowing 30 days for NCS to dispute Sterling's certification of its earnings, 15 days for the parties to resolve any such dispute, and an unspecified amount of time for the independent appraisal process to be conducted, the 45 day provision, as interpreted by NCS, would largely render a reduction impossible to achieve and those other provisions mean-

ingless. Under these circumstances, NCS has failed to demonstrate that the 45 day provision is a condition precedent, and its first issue is overruled.

### Dismissal of Pending Claims

■■■ NCS's second issue contends that its live pleading at the time of judgment contained claims that were not within the scope of the appraisal and were thereby dismissed without evidence or a hearing.

■■ Except within seven days of trial or thereafter (during which leave of court is required), parties may generally amend their pleadings at any time that does not operate as a surprise to the opposing party. *See* Tex.R. Civ. P. 63. A trial court may conclude that an amendment is, on its face, calculated to surprise or would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Greenhalgh v. Serv. Lloyds Ins. Co.,* 787 S.W.2d 938, 940 (Tex.1990); *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex. 1980). When amendments which introduce new substantive matter have been refused by a trial court under Rule 63, the burden is on the complaining party to show an abuse of discretion, rather than on the opposing party to show surprise. *Hardin,* 597 S.W.2d at 349.

■■ On appeal, a trial court's refusal to allow an amendment will not be disturbed unless the complaining party shows a clear abuse of discretion. *See id.* at 349–50. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or

---

1. Although not material to our disposition, it is not apparent from NCS's brief whether this issue challenges the trial court's decision to order the appraisal or to enter judgment on it.

2. The note and agreement each recite that they are governed by the law of Massachusetts.

3. *See Barton v. Auto. Ins. Co.,* 309 Mass. 128, 34 N.E.2d 516 (1941); *Nadeau v. Ins. Co. of State of Penn.,* 238 Mass. 462, 131 N.E. 69 (1921); *Wood v. Roy Lapidus, Inc.,* 10 Mass. App.Ct. 761, 413 N.E.2d 345 (1980).

principles. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex.2002). When reviewing matters committed to a trial court's discretion, a reviewing court may not set aside the trial court's ruling unless it is clear from the record that the trial court could only reach one decision. *Id.*

NCS originally filed this lawsuit as a simple breach of contract action to collect on the note. At the time the appraisal was ordered, performed, and its report issued, its determination was to be dispositive of NCS's sole substantive claim. Therefore, although the appraisal was not an arbitration, it would effectively serve as the adjudication of the only claim in the case. In addition, despite knowing of its other claims (for fraud and breach of fiduciary duty) for the fifteen months the case had been on file, and the considerably greater body of facts (and thus evidence) necessary to support those new claims, NCS did not amend its petition to add them until the appraisal was completed and the trial court was about to enter final judgment upon it, ending the lawsuit.[4] The newly filed claims would thus have essentially taken the case from the "finish line" back to the "starting line," requiring the parties and trial court to initiate the lengthy process of discovery, pre-trial matters, and potentially a full trial. Under these circumstances, we believe it was within the trial court's discretion to conclude that the amendment, on its face, operated as a surprise to Sterling or otherwise reshaped the cause of action to Sterling's prejudice and, thus, to deny it. *See Greenhalgh*, 787 S.W.2d at 940; *Hardin*, 597 S.W.2d at 349. Accordingly, NCS's second issue is overruled.

### Appraiser Exceeding Authority

NCS's third issue contends that the appraiser exceeded his authority in the manner that he calculated earnings. However, the closest our record comes to reflecting that this complaint was raised in the trial court is a single sentence in NCS's motion for new trial stating, "The Trial Court erred in entering Judgment on the appraisal . . . on the basis that the appraisal itself fails to properly allocate expenses." We find no portion of the record at which NCS raised in the trial court the specific grounds for this contention that it asserts on appeal.[5]

In addition, the agreement expressly provides that the appraiser's determination of earnings "shall be conclusive." Nevertheless, NCS contends that the appraiser exceeded his authority by failing to follow the method for determining earnings specified in the agreement. The agreement provides that (for purposes of determining the earnings) NCS must "consent to all major overhead expenditures in writing in excess of $5000. . . ." NCS contends that the appraiser failed to follow this directive in that he deducted from earnings overhead expenditures for which NCS had not given written approval.

However, NCS's brief cites no evidence in the record showing any such lack of approval. In addition, of the expenditures NCS challenges, most were expressly deemed by the appraiser not to be overhead. NCS has failed to show error in this determination or that the appraiser (a CPA firm) lacked authority under the agreement to determine which expenditures constituted overhead under the cir-

---

**4.** NCS claims that the case was abated when the appraisal was ordered. However, the only portion of the record it cites to support this contention is the trial court's docket sheet, which makes no mention of ever abat-

ing the case or, for that matter, unabating it before NCS's amended petition was filed.

**5.** *See* Tex.R.App. P. 33.1.

cumstances. Therefore, rather than exceeding its authority by failing to follow the calculation method specified in the contract, the appraiser merely applied that method in a manner with which NCS disagrees.[6] Accordingly, this issue fails to demonstrate error by the trial court in confirming the appraiser's report and is overruled.

### Allocation of Appraiser's Fee

NCS's fourth issue asserts that the trial court's judgment, assessing costs of court against the party incurring them, improperly allocated portions of the appraiser's cost to NCS. Conversely, at oral argument, NCS's counsel argued that the appraiser's fee was not a cost of court at all so as to even be included in the court's assessment of costs. Moreover, the bill of costs in our record does not include any amount for the appraiser.[7] Because it thus lacks a factual basis in the record, NCS's fourth issue is overruled, and the judgment of the trial court is affirmed.

---

**6.** *See Cambridge St. Metal Co. v. Corrao*, 30 Mass.App.Ct. 150, 566 N.E.2d 1145, 1149 (1991).

**7.** In addition, although NCS's petitions claimed principal and interest under the note and statutory attorney's fees, they not only failed to allege facts or assert a claim for the appraiser's fee, but the amended petition expressly claimed that the appraisal provision did not apply. Nor have we found any other portion of the record at which a claim for this cost was asserted, or any evidence that it was paid by NCS so as to be recoverable by it. Moreover, if the appraiser's report establishes that the cost is to be paid by Sterling, as NCS contends, then the trial court's judgment "consistent with" that report so orders. Either way, NCS has failed to establish that the trial court failed to award NCS the appraiser's fee or that it erred if it did so.