NO. 07-03-0552-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 28, 2006
_____

SUSAN SINGLETON, INDEPENDENT EXECUTRIX
OF THE ESTATE OF ANNA ROBINSON, DECEASED, APPELLANT

V.

NORTHWEST TEXAS HEALTHCARE SYSTEM D/B/A NORTHWEST
TEXAS HOSPITAL; ROY CASTILLION, P.T.; ANTOINETTE FLANAGAN, R.N.;
OPAL LYNN DYE, R.N.; AND DUSTIN HO-GLAND, P.C.S., APPELLEES
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 89,261-E; HONORABLE ABE LOPEZ, JUDGE
_____

Before REAVIS and CAMPBELL, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Susan Singleton, Independent Executrix of the Estate of Anna Robinson,

deceased, filed a healthcare liability claim against Northwest Texas Healthcare System

d/b/a Northwest Texas Hospital ("NWTHS") under former article 4590i, the Medical Liability

and Insurance Improvement Act. Appellant later filed her Second Amended Original

_____

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.

Petition and added Roy Castillion, P.T., Antoinette Flanagan, R.N., Opal Lynn Dye, R.N., and Dustin Ho-Gland, P.C.S. as defendants (these individual defendants and NWTHS will collectively be referred to as "appellees"). NWTHS filed its motion to dismiss based on inadequate 4590i expert report and appellees moved to strike appellant's Second Amended Original Petition. The trial court granted both motions and this appeal ensued. We will affirm.

Anna Robinson was admitted to NWTHS on December 30, 2000 and underwent triple coronary artery bypass graft surgery on January 4, 2001. Four days later, on January 8, she was transferred from the intensive care unit to a room on the fourth floor of the hospital. The first evening after she was transferred, a patient care specialist, Dustin Ho-Gland, assisted Robinson to the bathroom. When Robinson stood from the commode, she fell and fractured both of her ankles.

Robinson originally filed suit against NWTHS on October 22, 2001 to recover for her injuries. On January 14, 2002, appellant filed a First Amended Original Petition which indicated Robinson had died, and appellant would maintain the suit as a survival action.[2] In January 2002, appellant filed her preliminary section 13.01(d) medical expert report authored by Cathy Johnson, M.S.N., R.N., C.N.S.

The parties entered into an Agreed Level III Scheduling Order. Under the terms of the agreed order, appellant's deadline to file her amended pleadings was August 15, 2002. Appellant filed her Second Amended Original Petition on November 27, 2002. Appellees

---

[2] There is no allegation that Robinson's death resulted from her fall at NWTHS.

filed their motion to strike the Second Amended Original Petition on December 30, 2002.

In January 2003, NWTHS also moved for dismissal under section 13.01(e), claiming that

appellant's expert report was inadequate.

The trial court held a hearing on both motions and later signed an order striking the

Second Amended Original Petition, thereby dismissing the individual defendants from the

lawsuit, and dismissing the suit against NWTHS with prejudice due to an inadequate expert

report. On appeal, appellant contends both actions of the trial court constituted abuses of

the court's discretion.

We first address the adequacy of the expert report. Under article 4590i, plaintiffs are

required, within 180 days of filing their healthcare liability claim, to provide each defendant

physician and healthcare provider an expert report with the expert's curriculum vitae or they

must voluntarily nonsuit the action against the physician or healthcare provider. TEX. REV.

CIV. STAT. art. 4590i, §13.01(d). The expert report must provide "a fair summary of the

expert's opinions as of the date of the report regarding applicable standards of care, the

manner in which the care rendered by the physician or health care provider failed to meet

the standards, and the causal relationship between that failure and the injury, harm, or

damages claimed." *Id*. at §13.01(r)(6). If a plaintiff timely files an expert report and the

defendant moves to dismiss because of the report's inadequacy, the trial court must grant

the motion only if it appears to the court, after hearing, that the report does not represent

a good faith effort to comply with the definition of an expert report in subsection (r)(6). *Id*.

at §13.01(l). To constitute a "good faith effort," the report must provide enough information

to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff

has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *American Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001).

"The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners." *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). The report does not need to marshal all of plaintiff's proof, but the report must be written by an expert and provide a fair summary of that expert's opinions regarding: (1) the applicable standard of care, (2) breach of that standard, and (3) the causal relationship between the breach and the injury. *Id*.; *Chisholm v. Maron*, 63 S.W.3d 903, 906 (Tex.App.–Amarillo 2001, no pet.). With regard to the third element, the expert must explain the basis of his statements to link his conclusions to the facts. *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999).

We review the trial court's order dismissing a claim for failure to comply with the expert report requirements of section 13.01(d) under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

NWTHS contends that Nurse Johnson's report "does not adequately or specifically address the standard of care applicable to NWTHS, in what manner it allegedly breached the standard . . . or how the alleged breach caused the injury." Appellant argues the

following portions of Nurse Johnson's report establish both the standard of care applicable to NWTHS and how that standard was breached:

> Documentation by a Physical Therapist earlier in the day of the incident reveals that they needed two people to transfer her from the bed to a chair at the bedside. Documentation about the incident reveals only one person assisted Ms. Robinson to the bathroom.
>
> . . .

> Any score greater than 6 requires the implementation of Fall Precautions.[3] No implementation record was found in the patient's chart or any evidence that fall precautions were implemented.
>
> . . .

> It appears from the report that Fall Implementations were not implemented or complied with.
>
> . . .

> When intervening with clients experiencing problems with body mechanics and who may depend on the nurse for assistance with positioning, turning, or ambulation, perseverance is one attitude the nurse must possess. Perseverance is especially important in the delegation of these activities to unlicensed health care providers or family members. Making certain that the task is performed and is performed correctly is an essential nursing function (Potter/Perry, 2001). In planning the care, the nurse should consider any risks for injury to the client including preexisting health concerns. A nurse who has even the slightest doubt about his or her strength and ability to ambulate a client alone should request help.
>
> . . .

---

[3] The report says Robinson was given a score of nine, out of a possible eleven, on a fall risk assessment.

The Nursing Practice Act for the State of Texas state [*sic*]:

The RN shall implement measure [*sic*] to promote a safe environment for clients and others; make assignments to others that take into consideration client safety and which are commensurate with the educational preparation, experience, knowledge, and physical and emotional ability of the persons to whom the assignments are made; delegate nursing tasks in compliance with 218.5, relating to general criteria for delegation and 218.6, relating to supervision; supervise nursing care provided by others for whom the RN is administratively or professionally responsible; and institute appropriate nursing intervention which might be required to stabilize a client's condition and/or prevent complications.

. . .

From the documentation, the RN was not in the room at the time of the fall, only the PCS. . . . Delegation of a nursing task to an unlicensed health care provider, such as ambulating patients, requires adequate supervision and verification of competency to perform the nursing task. No such documentation of either was found in the record.

"Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d at 880. Appellant argues that the above-referenced language from Nurse Johnson's report establishes what NWTHS should have done differently: "[i]mplement fall precautions and make sure there were two people to assist Mrs. Robinson in the bathroom." We disagree with appellant's interpretation of the expert report.

Nurse Johnson's report says that two people were needed to move Robinson from her bed to a chair earlier in the day. It does not say that event established a standard of care requiring two persons to assist her on all subsequent occasions. The report comes closer to stating a standard of care with its statement that Robinson's score on the fall risk

6

assessment required NWTHS to implement "fall precautions." But the report does not tell the defendant and court what "fall precautions" are. It does not say that implementation of such precautions would have required that two people assist the patient to the bathroom.[4] Without more information about the nature and requirements of "fall precautions," the report's reader is left to speculate about what the hospital should have done differently. *Palacios*, 46 S.W.3d at 880 (statement that "precautions to prevent [patient's] fall were not properly used" is not a statement of a standard of care). The report's quote from the Nursing Practice Act and its discussion of the required perseverance and supervision of nursing staff are too general to identify a standard of care applicable to NWTHS or how NWTHS breached that standard in its care of Robinson. Nurse Johnson's report fails to inform NWTHS of the specific conduct appellant has called into question. *Palacios*, 46 S.W.3d at 879.

With regard to causation, the expert's report must contain information linking the harm to the alleged breach in a manner that is not merely conclusory. *Bowie*, 79 S.W.2d at 53. Appellant directs us to the portion of Nurse Johnson's report, which after explaining that fall precautions were not implemented, that there was only one person assisting, and that Robinson fell when standing up from the commode, states as follows: "Failure to implement fall precautions resulted in Ms. Robinson falling which resulted in bilateral ankle fracture which led to her immobility." Appellant's brief argues the expert report explains the "obvious link between the default (failing to implement fall protections and provide two

---

[4] Nor does the report say that "fall precautions" would require that an RN, or a person with any other particular training, be in the room, either to assist or supervise.

people to assist with ambulation) and injury (both ankles broken in the fall)...." We disagree.

Without a clear statement in the report of the standard of care and the breach of that standard, Nurse Johnson's statement of the causal link between the alleged breach and Robinson's resulting injuries becomes merely her conclusion. A conclusory report does not meet the Act's requirements for an expert report. *Bowie*, 79 S.W.3d at 53 (citing *Palacios*, 46 S.W.3d at 879). The trial court did not abuse its discretion when it concluded the expert report was inadequate. We overrule appellant's first issue on appeal.

In her second issue, appellant argues the striking of her Second Amended Petition was improper. As noted, an Agreed Level III Scheduling Order was signed by the trial court on March 18, 2002. The agreed order set a trial "within 60 days after February 15, 2003" and a deadline of August 15, 2002 for appellant to file amended pleadings. Under the agreed order, the deadline for appellees to designate expert witnesses was November 15, 2002 and the discovery deadline was December 15, 2002. NWTHS's deadline to amend pleadings was set for October 15, 2002. On that day, NWTHS filed its First Amended Original Answer, which included special exceptions to Plaintiff's First Amended Original Petition. On November 27, 2002, appellant filed her Second Amended Original Petition, which named appellees Castillion, Flanagan, Dye and Ho-Gland as four new party defendants.

These new defendants filed their Original Answer on December 30, 2002 and requested a sixty-day abatement pursuant to section 4.01(a) of article 4590i. That same

8

day, the new defendants, along with NWTHS, filed their Motion to Strike Amended Pleading.  The trial court granted the Motion to Strike.

Appellant correctly couches her appellate issue in terms of an abuse of discretion review.  A trial court's refusal to allow an amendment to pleadings will not be disturbed on appeal unless the complaining party demonstrates a clear abuse of discretion. *NCS Mgmt. Corp. v. Sterling Collision Centers, Inc.*, 108 S.W.3d 534, 536 (Tex.App.–Houston [14th Dist.] 2003, pet. denied).  *See In re Western Star Trucks US, Inc.*, 112 S.W.3d 756, 763 (Tex.App.–Eastland 2003, no pet.) (orig. proceeding) (describing trial court's decision to accept or reject an amended pleading as "inherently discretionary function") (citing *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980)).  As noted, a trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  *Downer*, 701 S.W.2d at 241-42.  When reviewing matters within the realm of the trial court's discretion, an appellate court may not set aside the trial court's ruling unless it is clear from the record that the trial court could reach only one decision.  *NCS*, 108 S.W.3d at 537 (citing *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002)).

On this record, we cannot say the trial court could have reached only one decision in ruling on appellees' motion to strike.  Pursuant to Rule of Civil Procedure 166, and as mandated by Rule 190.4, the agreed scheduling order set deadlines for both parties to file amended pleadings.[5]  Appellant's Second Amended Original Petition, adding four

---

[5] The agreed scheduling order recited it was entered in accordance with Rules of Civil Procedure 166 and 190.

defendants to the suit, was filed without leave of court over three months after the deadline to file amended pleadings set by the agreed order.[6]

Still, appellant contends leave to amend was mandatory pursuant to Rule 63 of the Texas Rules of Civil Procedure, citing *Greenhalgh v. Service Lloyd's Ins. Co.*, 787 S.W.2d 938, 939-40 (Tex. 1990). Appellant emphasizes that the defendants added are the same hospital employees whose conduct NWTHS had been defending since the outset of the litigation, that their addition as parties changed none of the substantive issues for trial, and that the amended pleading did not assert a new cause of action or otherwise reshape the nature of the trial. NWTHS argues the trial court's grant of the motion to strike was not an abuse of its discretion even under the standard of *Greenhalgh*, and we agree. While the addition of the employees may have changed none of the facts to be presented at trial, the trial court was not required to find that joining the employees as parties was as inconsequential as appellant suggests. Again, the trial court was not presented with a circumstance in which it could make only one decision.

Appellant also argues NWTHS "invited" the filing of her second amended petition by its special exceptions and thereby waived any complaint of untimeliness. She cites *Cameron v. Univ. of Houston*, 598 S.W.2d 344, 345 (Tex. App.–Houston [14th Dist.] 1980, writ ref'd n.r.e.) for the proposition that "[a] party must be given the opportunity to replead

---

[6] We do not agree with appellant's contention that the scheduling order did not set a deadline for joinder of parties. While the better practice might be to set out separately each of the deadlines mandated by Rule 190.4, the language in the agreed order here setting deadlines by which each party "shall file amended pleadings" necessarily included amended pleadings adding parties.

to cure defects alleged by special exceptions before claims may be dismissed." *Cameron*, however, deals with the opportunity to amend pleadings after special exceptions have been sustained by a trial court. The trial court here did not rule on the hospital's special exceptions. The court could take the hospital's assertion of special exceptions into account in ruling on appellees' motion to strike, but the court was not required to deny the motion because of them.

Finally, appellant contends that because the trial court waited until after the statute of limitations had run to grant appellees' motion to strike the Second Amended Original Petition, the court's action constituted an improper death penalty sanction. We do not agree the trial court's action is properly labeled as a sanction. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844 (Tex. 1992) (indicating "[t]he legitimate purposes of discovery sanctions are to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators")*; Smart v. Winslow*, 868 S.W.2d 409, 414 (Tex.App.–Amarillo 1993, no writ) (same). The trial court did not strike the Second Amended Original Petition to impose punishment on appellant, but struck the amendment in response to a Motion to Strike. Appellees' motion to strike simply was the proper means to object to appellant's filing of her amended pleading after the date set in the agreed scheduling order. *See* 1 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 5.70 (2d ed. 2004) (providing a trial court may examine plaintiff's justification for adding parties subsequent to a motion to strike). Further, even if treated as a sanction, the trial court's action did not constitute a death penalty sanction because it did not preclude presentation of the merits of appellant's case. *See Transamerican Natural Gas*

11

*Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (describing "[s]anctions which are so severe as to preclude presentation of the merits of the case"). As appellees point out, appellant's case as presented in her first amended original petition was not affected by the court's action on the motion to strike.

For the foregoing reasons, we hold the trial court's decision to strike the Second Amended Petition was not an abuse of discretion. Appellant's second issue on appeal is overruled, and we affirm the judgment of the trial court.


James T. Campbell
Justice