Reversed and Rendered and Opinion filed March 8, 2007








Reversed
and Rendered and Opinion filed March 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00621-CV

_______________

 

CDI ENGINEERING GROUP, INC., Appellant

 

V.

 

ADMINISTRATIVE EXCHANGE, INC., Appellee

                                                                                                                                               


On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 03‑12816

                                                                                                                                                

 

O P I N I O N

CDI
Engineering Group, Inc. (CDI) appeals a judgment in favor of Administrative
Exchange, Inc. (AEI) on the grounds that: (1) a letter memorializing an
agreement between the parties is not an enforceable contract; (2) the trial
court erred in submitting an incorrect question to the jury; (3) the evidence
is legally and factually insufficient to support the jury=s determination that all conditions
precedent to the agreement were met; and (4) the evidence is legally and
factually insufficient to support the jury=s award of damages.  Because we find
the evidence legally insufficient to support the jury=s finding that all conditions
precedent to the agreement were met, we reverse and render judgment that AEI
take nothing.








I.  Background

In early
2002, Lyondell Chemical Company and Equistar Chemicals, LP (Lyondell) proposed
a vendor managed program to manage their temporary employees.  Prior to the
proposal of this program, Lyondell hired a large number of temporary employees
through several different staffing companies.  The purpose of the program, the
genesis of which arose after the tragedy of September 11, 2001, precipitating
Lyondell=s concern with background checks, was
to consolidate the hiring of temporary employees with one company that could
oversee any necessary subcontractors.  Lyondell solicited bids from a number of
temporary staffing companies to act as a general contractor for the program.  
Lyondell sought a staffing company that could provide both technical and
nontechnical employees.[1]  Both CDI and
AEI submitted proposals.  CDI had experience primarily providing technical
employees; AEI specialized in nontechnical employees.  Lyondell rejected AEI=s proposal because AEI is a regional,
not a nationally based, company; CDI, which has a national presence, was
included as one of four semi-finalists for the vendor managed program.  
Lyondell informed CDI that for CDI to win the contract it needed to team with a
firm that provided nontechnical employees.

In March
2002, Philip Luna, vice president of CDI, contacted Dick Darroh, president of
AEI, to discuss working together to win the Lyondell contract.  The parties
agreed that AEI would supply nontechnical employees to CDI for the purpose of
obtaining the Lyondell vendor managed program.  On April 1, 2002, the parties
memorialized their agreement in a letter, with the following language pertinent
to our inquiry:








This letter
will serve to confirm CDI Engineering Group=s
(CDI) intent to respond to Lyondell Chemical Company and Equistar Chemicals,
LP, RFP No. 2002-04.  CDI would like to team with Administrative Exchange, Inc.
(AEI) for the bidding and execution of this Managed System for Technical and
Clerical Staff Augmentation Program.

 

* * * * *

CDI agrees
to utilize AEI as exclusive supplier for those positions described as clerical
and administrative non-professional and those described as human resources,
accounting, laboratory, legal, tax and treasury.  CDI will be responsible for
the remaining technical and professional positions, and will utilize AEI as a
preferred supplier for these positions as needed.

 

As part
of the bidding process, on May 20, 2002, Lyondell met with CDI to discuss CDI=s proposal.  At that time, Dave
Gordon, director of corporate staffing for Lyondell, informed CDI that Lyondell
viewed AEI as an obstacle to CDI=s bid.  Lyondell employees informed
CDI that they would permit AEI to manage the nontechnical positions in the
contract as a subcontractor under CDI.  Lyondell and CDI subsequently entered
into a detailed contract under which CDI would manage all of Lyondell=s temporary employees.  The contract
expressly approved AEI, CDI Professional Services, and Today=s Staffing as subcontractors for
CDI.  There was no clear provision in the contract that AEI would be the
exclusive supplier and supervisor of nontechnical employees.








In
August 2002, AEI learned that CDI was using other staffing companies to provide
nontechnical employees to Lyondell.  At a meeting on August 22, 2002, a
representative of CDI told AEI that it would not be permitted to manage other
nontechnical vendors.  Moreover, AEI was informed that CDI intended to retain the
forty current AEI employees and would recruit additional nontechnical employees
from other staffing companies.  AEI rejected CDI=s proposal as contravening the April
1, 2002 agreement.  CDI responded that the agreement was contingent on Lyondell=s approval of AEI as an exclusive
supplier.  CDI contended that it was not bound by the agreement because
Lyondell did not approve AEI as the exclusive supplier of nontechnical
services.  AEI subsequently sued CDI for breach of the April 1, 2002 agreement,
fraud, and misappropriation of trade secrets.  At trial, a jury found that the
April 1, 2002 letter was an enforceable agreement, that all conditions
precedent to the agreement had been met, that CDI breached the agreement, and
that AEI suffered damages of $879,168.89.  The jury found that CDI did not
commit fraud or misappropriate trade secrets.

II. Approval of AEI as an Exclusive Supplier was a Condition
Precedent to the Contract

In its
third issue, CDI contends the evidence is legally and factually insufficient to
support the jury=s determination that all conditions precedent had been met
for AEI to enforce the agreement[2].  Our
consideration of this issue is controlled by Question No. 3, which was posited
to the jury as follows:

Have all
conditions precedent to AEI=s ability to
enforce the agreement occurred?

Conditions
precedent to an obligation to perform are acts or events that occur after the
contract is made and that must occur before there is a right to immediate
performance and before there can be a breach of contractual duty.  You are
instructed that Lyondell=s approval of AEI as the exclusive supplier of
non-technical services is a condition precedent to AEI=s ability to enforce the agreement.

 

A.        The Standard of Review.








The test
for legal sufficiency,Amust always be whether the evidence at trial would enable
reasonable and fair‑minded people to reach the verdict under review.@  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005). A[L]egal‑sufficiency review in
the proper light must credit favorable evidence if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not.@  Id.  Jurors cannot ignore
undisputed testimony that is clear, positive, direct, otherwise credible, free
from contradictions and inconsistencies, and could have been readily
controverted.  Id. at 820.  Although the reviewing court must consider
evidence in the light most favorable to the judgment, and indulge every
reasonable inference that would support it, if the evidence permits only one
inference, neither jurors nor the reviewing court may disregard it.  Id.
at 822.  We sustain a legal sufficiency challenge when the record discloses one
of the following situations: (1) complete absence of evidence establishing a
vital fact; (2) the court is barred from rules of law or of evidence from
giving weight to the only evidence of a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
conclusively establishes the opposite of a vital fact.  Id. at 810.  We
review the record to determine if it contains any evidence that Lyondell
approved AEI as the exclusive supplier of nontechnical services.  See
Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000) (holding appellate court
reviews sufficiency of the evidence against the charge actually given).  If the
evidence does not support the jury=s finding that Lyondell approved AEI
as the exclusive supplier of nontechnical services, AEI cannot enforce the
agreement.  See NCS Mgmt. Corp. v. Sterling Collision Ctrs. Inc., 108
S.W.3d 534, 536 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).

A party
seeking to recover under a contract bears the burden of proving that all
conditions precedent have been satisfied.  Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 283 (Tex. 1998).  A condition precedent
is an event that must happen or be performed before a right can accrue to
enforce an obligation.  Id.  If the condition is not fulfilled, the
contract or obligation attached to the condition cannot be enforced.  NCS
Mgt., 108 S.W.3d at 536.

B.        CDI and AEI agree that
Lyondell must approve AEI as an exclusive supplier.

Both
parties agreed that Lyondell=s approval of AEI as the exclusive supplier of 








nontechnical services was
a condition precedent to the April 1, 2002 agreement.[3]
 Darroh admitted at trial that the terms of the April 1, 2002 agreement
required Lyondell to approve AEI as the exclusive provider of nontechnical
employees. 

The
contract between CDI and Lyondell was admitted into evidence, and provides that
ANeither Contractor nor its
Subcontractor(s) shall subcontract or delegate any of the Work except to
Subcontractors previously approved in writing by [Lyondell].@  In an appendix to the contract,
Lyondell expressly approved three staffing companies as AContractor=s Subcontractors.@  The contract further provides that
Lyondell Ashall have the right to object to any such Subcontractors at any time and
in the event of such objection Contractor shall promptly replace the
Subcontractor in question.@  

C.        The committee in charge of
the vendor managed program told CDI that AEI could not be an exclusive
supplier.

1.         Dave Gordon, head of
corporate staffing, and others said no to AEI as an exclusive supplier.








Maureen
Valenza is the manager for capital projects and services accounts for
Lyondell.  Valenza was the lead negotiator for the vendor managed program and
directed the commercial aspects of the proposal process.  Dave Gordon was the
technical lead on the bidding project because as the director of corporate
staffing he had expertise in human resource matters.  The other committee
members were stakeholders in other aspects of the company, such as
manufacturing, research and development, capital projects, legal, and different
segments of the organization that would require personnel from time to time. 
In his role as technical lead, Gordon had more authority on the committee than
the other members.  Valenza testified that after the committee reduced its list
of possible general contractors, it began a clarification process in which the
committee reviewed each staffing company=s execution plan.  Gordon stated that
Lyondell required a network of temporary staffing suppliers to ensure immediate
access to temporary employees.  Lyondell wanted a broad network of suppliers
capable of providing skilled employees who could pass background checks. 
Valenza further testified that Lyondell never agreed AEI could be the exclusive
supplier for nontechnical services.  

In the
first round of negotiations, the committee informed CDI that it would not get
the contract if AEI were designated as the exclusive supplier for nontechnical
employees.  After the contract was awarded, CDI asked to keep AEI as a
supplier, and Lyondell agreed to permit CDI to use AEI, but instructed CDI to
manage AEI in line with the contract as it managed other vendors.  Gordon
testified that Lyondell never agreed AEI would be the exclusive supplier of
nontechnical services, nor did Lyondell agree that AEI would manage the
nontechnical portions of the contract.  Gordon further testified that Lyondell
would have included that provision in its contract with CDI if Lyondell had
agreed to permit AEI to be the exclusive supplier. 

2.         No evidence directly
contradicts Gordon=s fiat that AEI could not be an exclusive supplier.








AEI
argues that Gordon was not the sole decision maker at Lyondell and that his
personal opposition to AEI did not foreclose the possibility that Lyondell
could approve AEI as an exclusive supplier.  However, on this record, the
vendor managed program was driven by the human resources department.  Gordon
was the head of human resources for corporate staffing and the only human
resources representative on the committee.  Valenza testified that the other
committee members deferred to him on this issue.  Gordon explained that the
human resources department at Lyondell was not pleased with AEI=s performance.  Gordon also testified
that based on Aanalytical@ responses from the remaining members of the committee, it
was evident to him that the committee shared his view of AEI.  But, even if
some of the committee members did not share his view of AEI, our result would
not change.  For if some held these views, they never expressed them publicly. 
The record contains no evidence showing whether the other committee members
would or would not have allowed AEI to be an exclusive supplier.  On this, the
record is completely silent and we can infer nothing.  Thus, we are left with
Gordon=s and Valenza=s descriptions of what Gordon and
Gordon only B actually told CDI: it would not get the contract if AEI was an exclusive
supplier.  Valenza=s testimony that she might have allowed AEI to be an
exclusive supplier is an after-the-fact opinion never expressed to CDI
certainly during the relevant time period.  On this record, the only oral
statements to CDI regarding the possibility of AEI being an exclusive supplier
were the resoundingly negative ones from Gordon.

AEI
contends that Lyondell Aaccepted AEI@ as the exclusive supplier of nontechnical services.  AEI
recognizes that the contract designates three subcontractors, but contends
nothing in the contract prohibited CDI from honoring the agreement and using
AEI as its exclusive supplier.  The jury, however, was not instructed that
Lyondell=s acceptance of AEI as a
supplier was a condition precedent to the contract.  The jury was
instructed that Lyondell=s approval of AEI as the exclusive supplier was
a condition precedent.  We must review the evidence against the charge actually
given.  See Osterberg, 12 S.W.3d at 55.  No evidence in the record,
either circumstantial or direct, shows Lyondell ever agreed that AEI would be
the exclusive supplier of nontechnical employees.  In fact, CDI presented
evidence conclusively establishing that Lyondell did not approve AEI as the
exclusive supplier.

D.        AEI=s best evidence to show Lyondell=s approval of AEI as an exclusive
supplier fails.

1.         The lack of interest by
one of the three subcontractors does not qualify as evidence that Lyondell knew
and tacitly approved AEI.

AEI
further contends that although under the contract three subcontractors were 








permitted, Today=s Staffing and CDI Professional
Services were neither interested, nor capable of, providing nontechnical
services to Lyondell.  The evidence referenced by AEI shows that Today=s Staffing provided temporary
nontechnical employees to Lyondell through the vendor managed program after AEI
pulled its employees out of the program. Dirk Dent, the head of Today=s Staffing, testified that Today=s Staffing was not particularly
suited to Lyondell=s needs.  Today=s Staffing primarily provided
administrative staffing for insurance companies, banks, and financial
institutions, whereas Lyondell needed administrative employees accustomed to a
corporate environment.  Richard Giannone, executive vice-president for CDI,
testified that Today=s Staffing and CDI Professional Services were included as a
safety net for CDI.[4]  AEI argues
the jury could infer approval of AEI as the exclusive supplier because AEI was
the only company that was willing to provide, or capable of providing,
administrative employees to Lyondell.  This evidence does not show that
Lyondell, tacitly or otherwise, approved AEI as an exclusive supplier.  We
would necessarily engage in impermissible inference stacking to reach that
conclusion.  See generally Schlumberger Well Surveying Corp. v. Nortex Oil
& Gas Corp., 435 S.W.2d 854, 858 (Tex. 1968).  To the contrary, the
evidence supports the conclusion that Lyondell did not want CDI to be subjected
to an exclusive supplier, but wanted a broad network of suppliers.

2.         At most, AEI was approved
as a primary, but not exclusive supplier.

AEI
further contends, Aon this record, >exclusive supplier= means that [AEI] would handle
Lyondell=s nontechnical staffing needs by
placing its own personnel and by managing other subvendors under the umbrella
of CDI=s overall management of the Vendor
Managed Project.@  As evidence of this intent, AEI references the testimony of
Dick Darroh that use of the term Aprimary subcontrator@ in the April 1, 2002 letter was the
same as use of the term Aexclusive supplier.@  As support for his assertion that
the terms were synonymous, Darroh reviewed several clarification letters sent
by CDI to Lyondell during the bidding process.








The
first letter, exhibit 6, is a communication from CDI to Lyondell explaining it
intends to use AEI as its Aprimary subcontractor@ for nontechnical positions.  The
next letter, exhibit 8, is a request from Lyondell for clarification on several
issues, including a question as to why if AEI is a subcontractor it is
highlighted versus the other subcontractors.  CDI responded in exhibit 9 by
stating, AAEI is proposed as our prime subcontractor for clerical and nontechnical
positions.@  The final letter mentioned in Darroh=s testimony and AEI=s brief as evidence of Lyondell=s approval of AEI as exclusive
supplier is exhibit 66, in which Lyondell=s representative asked, AWith Contractor managing the
technical side and AEI the clerical will there be a point of contact for Owner=s managers or two?@  CDI answered, AThere will only be one
point-of-contact for Owner=s managers B STAR-1.[5]  STAR-1 will
be the prime contractor for this program; AEI is a primary subcontractor to
STAR-1.@  

This
evidence supports the conclusion that CDI attempted to negotiate Aprimary subcontractor@ status for AEI.  The evidence,
however, does not support the jury=s determination that Lyondell
approved AEI as the exclusive supplier of nontechnical employees.  CDI=s designation of AEI as its primary
subcontractor does not support the conclusion that Lyondell approved AEI as the
exclusive supplier.  

In
general parlance, Aprimary@ and Aexclusive@ are not synonymous.[6]  AEI has
presented no evidence that the terms are synonymous in this specific context or
in the staffing industry as terms of art. 








In its
contract with CDI, Lyondell expressly designated three subcontractors to be
used by CDI.  The approved subcontractors were staffing companies that supplied
nontechnical employees.  Further, Lyondell required that it approve all
subcontractors and reserved the right to object to the use of any
subcontractor.  The testimony of Valenza and Gordon was clear, positive,
direct, otherwise credible, free from contradictions and inconsistencies, and
could have been readily controverted.  AEI presented no evidence to contradict
the express provisions of the contract or the unequivocal testimony of Gordon
and Valenza.  The jury could not ignore this undisputed evidence.  The record,
therefore, establishes the opposite of a vital fact, i.e., the condition
precedent of Lyondell=s approval was not met.  See City of Keller, 168 S.W.3d
at 810.

In sum,
the evidence is legally insufficient to support the jury=s answer to Question No. 3.  We
sustain CDI=s third issue.  Accordingly, the judgment of the trial court is reversed
and judgment is rendered that AEI take nothing.

 

 

 

/s/        Charles W. Seymore

Justice

 

 

Judgment rendered and Opinion filed
March 8, 2007.

Panel consists of Justices Fowler,
Seymore and Mirabal.[7]

 

 

 









[1]  Technical positions included construction
coordinators, project planners, drafters, project managers, engineers,
designers, and engineering coordinators.  Nontechnical positions included
accounting, paralegals, auditors, general office clerks, administrative
assistants and mail room clerks.





[2]  In its first issue, CDI challenges the jury=s finding that the April 1, 2002 letter was an
enforceable agreement.  Because issue three is dispositive of the appeal, we
will not address CDI=s first issue and assume without deciding that the
letter constituted an enforceable agreement.





[3]  AEI objected to Question No. 3, requesting the
inclusion of the phrase, Aupon request of CDI@ in
the instruction portion of the question.  AEI took the position that CDI could
not avail itself of a condition precedent if it did not undertake steps to
ensure occurrence of the condition precedent.  The trial court overruled AEI=s objection.  AEI has not raised this issue in its
responsive brief.





[4]  AEI does not reference any evidence showing if CDI
Professional Services was capable of providing, or willing to provide,
nontechnical employees to Lyondell. 





[5]  To maintain anonymity among the competing
contractors, CDI used the name ASTAR-1"
during the initial phase of the bidding.





[6]  APrimary@ is generally defined as, Afirst in rank or importance.@  AExclusive@ is generally defined as, Aexcluding or having power to exclude.@ Webster=s
International Dictionary 793, 1800 (3d
ed. 1993)  





[7]  Senior Justice Margaret Garner Mirabal sitting by
assignment.