Affirmed in part, Reversed and Remanded in part and Memorandum Opinion
filed November 24, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-07-00809-CV

___________________

 

Patrick William Keys, Appellant

 

V.

 

Litton Loan Servicing, L.P.,
Appellee



 



 

On
Appeal from the 129th District Court

Harris County,
Texas



Trial Court Cause No. 2006-40536

 



 

 

MEMORANDUM OPINION

In this longstanding
property-foreclosure dispute, Patrick William Keys, pro se, appeals the final
judgment in favor of Litton Loan Servicing, L.P., the loan servicer for an
adjustable rate note on real property owned by Keys.  We affirm the trial court
in all respects with the limited exception of its granting of Litton’s “Motion
for Summary Judgment as to Attorneys’ Fees.”  Accordingly, we reverse and
remand for further proceedings limited to the award of those attorneys’ fees.

I.  Factual
and Procedural Background

On November 30, 2001, appellant Patrick William Keys
purchased a piece of real property in Harris County through a warranty deed
with vendor’s lien.  Financing for the purchase was by an adjustable rate note
(hereinafter “the Note”) to WMC Mortgage Corp. secured by a Deed of Trust.  WMC
Mortgage Corp. subsequently assigned the Note to U.S. Bank, N.A.  Appellee
Litton Loan Servicing, L.P. (hereinafter “Litton”) is the servicer of the Note
for U.S. Bank. 

Keys, appearing pro se, and Litton were involved in
litigation beginning in 2005 over the foreclosure of the property pursuant to
U.S. Bank’s lien.  That suit was resolved on May 24, 2006, by an agreed order
of dismissal with prejudice (hereinafter “Agreed Order”) signed by both parties
and the trial court.  The most significant aspects of the Agreed Order required
Keys to pay $140,000 by September 1, 2006 or otherwise acquiesce in the
foreclosure of the property, and Litton agreed to provide a separate payoff
statement and refrain from any credit reporting on Keys until September 1,
2006.  

Keys, however, did not tender payment in the amount
of $140,000 by September 1, 2006.  Instead, Keys filed suit against Litton
alleging the company had materially failed to comply with the Agreed Order,
thereby excusing Keys’s own performance.  Keys also requested a declaratory
judgment that the Agreed Order was null and void and all rights, liens, and
attachments held by Litton, serviced by Litton, or assigned to Litton for the
real property were null and void.  Litton responded by filing its own breach of
contract counterclaim and declaratory-judgment action as well as an application
for injunctive relief, and both parties moved for summary judgment.  

On October 2, 2006, Keys filed for chapter 13
bankruptcy in federal court, which was dismissed on October 23, 2006.  In the
meantime, in state court, Keys filed another amended petition, adding a suit to
quiet title claim and a negligence per se claim.  The trial court eventually
granted Litton summary judgment on Keys’s suit to quiet title claim; Keys
non-suited his claim for negligence per se.  On November 1, 2006, the trial
court issued a very detailed interlocutory order, which, among other things,
allowed Litton to enforce its lien with respect to the property in question and
pursue its statutory and contractual remedies, including posting the property
for foreclosure sale in accordance with the Deed of Trust. 

Keys then filed his fourth amended petition, adding
claims for statutory and common-law fraud.  The trial court eventually granted
Litton summary judgment on these claims.  The property was sold to U.S. Bank,
N.A. at a foreclosure sale, but the litigation continued largely unabated. 
Keys filed his fifth amended petition, adding yet more new claims, and adding
U.S. Bank, N.A. as a party.  Keys also sued his opposing counsel, the Leyh
& Payne, L.L.P. law firm, attorney Steven A. Leyh, attorney John Barnes,
and substitute trustee J. Robert MacNaughton.  Litton moved to strike Keys’s
fifth amended petition, and the trial court granted the motion.   

On April 19, 2007, Litton filed a motion for summary
judgment on attorneys’ fees.  On August 21, 2007, in a final judgment, the
trial court granted Litton’s motion for summary judgment on attorneys’ fees and
awarded attorneys’ fees in the amount of $35,977.83.  

Keys now challenges (1) the trial court’s treatment
of the Agreed Order of May 24, 2006, (2) the order of November 1, 2006,
granting summary judgment on Litton’s breach of contract counterclaim, (3) the
order of April 9, 2007, granting summary judgment on Keys’s fraud claim, (4)
the order of August 21, 2007, granting summary judgment on Litton’s attorneys’
fees, and (5) the order of February 19, 2007, granting Litton’s motion to
strike Keys’s fifth amended petition.   

II. 
Analysis

A.        Legal Effect of Agreed Order

In his first issue, Keys contends the trial court
erred by ignoring the legal effect of the Agreed Order in the prior lawsuit. 
Specifically, Keys raises several reasons why he claims the Agreed Order
extinguished any claims U.S. Bank or Litton had on the Note and Deed of Trust. 


Even if we view the Agreed Order to Dismiss with
Prejudice as an agreed judgment, as Keys contends we should, an agreed judgment
may be interpreted in the same manner as a contract.  Gulf Ins. Co. v. Burns
Motors, Inc., 22 S.W.3d 417, 422 (Tex. 2000); St. Raphael Med. Clinic,
Inc. v. Mint Med. Physician Staffing, LP, 244 S.W.3d 436, 439 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).  Ordinary principles of contract law
require us to determine the true intent of the parties as expressed in the
Agreed Order.  Anzilotti v. Gene D. Liggin, Inc., 899 S.W.2d 264, 267
(Tex. App.—Houston [14th Dist.] 1995, no writ) (reviewing agreed order to
arbitrate under contract principles).  Whether a contract is ambiguous is a
question of law for the court to decide by looking at the contract as a whole
in light of the circumstances present when the contract was entered. 
Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73-74 (Tex. 1997)
(stating in context of agreed judgment).  A contract that can be given a
definite or certain legal meaning is not ambiguous.  Id. at 74.

Here, the Agreed Order is not ambiguous.  It states,
in relevant part, that Keys is to tender $140,000 to Litton on or before
September 1, 2006.  In the event Keys did not tender the $140,000 by September
1, 2006, Litton was authorized to enforce its lien and pursue its statutory and
contractual remedies, including those necessary to recover its interest in and
gain possession of the real property without further delay.  This action
included posting the property for the October 2006 foreclosure sale and
foreclosing its lien in accordance with its Deed of Trust and applicable law. 

It is undisputed that Keys did not tender $140,000 to
Litton by September 1, 2006.  Therefore, under the terms of the Agreed Order,
Litton was authorized to enforce its lien and pursue its statutory and
contractual remedies.  Nowhere does the Agreed Order state that this agreement extinguished
the lien under the Note and Deed of Trust in the event Keys defaulted on the
payment of the $140,000.  In fact, the Agreed Order states just the opposite.[1] 

Keys also raises the contract principles of accord
and satisfaction and novation under this issue.  The Agreed Order may have been
an accord and satisfaction of the Note, as Keys asserts, if he had paid the
amount due.  See Jenkins v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex.
1969) (describing an accord and satisfaction as a contractual modification that
rests upon a new contract in which the parties agree to discharge the existing
obligation by means of a lesser payment tendered and accepted).  He did not,
however, and, under the Agreed Order, Litton was then entitled to enforce its
lien and pursue its statutory and contractual remedies.  Likewise, even if the
Agreed Order is treated as a novation, as Keys suggests, the purported new
agreement did not extinguish the previous obligation in the event of
non-payment.  See Mandell v. Hamman Oil & Ref. Co., 822 S.W.2d 153,
163 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (stating that a novation
consists of (1) a valid previous obligation, (2) an agreement among all parties
to accept a new contract, (3) the extinguishment of the previous obligation,
and (4) a valid new agreement), abrogated on other grounds by Coastal
Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d 1 (Tex. 2008).   

In Keys’s seventh, ninth, and tenth sub-issues, he
references a lis pendens notice of the lawsuit, preservation of title
issues, and facts arising out of another case not part of this appeal,
respectively.  While he cites to both the record and authority under these
sub-issues, he fails to make any arguments on these sub-issues.  Where a party
fails to support an issue with argument, he waives any error on appeal.  Lundy
v. Masson, 260 S.W.3d 482, 503 (Tex. App.—Houston [14th Dist.] 2008, pet.
denied).  Therefore, Keys has failed to adequately brief these sub-issues on
appeal and, in doing so, waived error.[2] 
See Tex. R. App. P. 38.1(i)
(“The brief must contain a clear and concise argument for the contentions made,
with appropriate citations to authorities and to the record.”).

Accordingly, we overrule Keys’s first issue.   

B.        Summary Judgment

In issues two, three, and four, Keys contends the
trial court erred by granting summary judgment on Litton’s breach of contract
counterclaim and attorneys’ fees claim and on Keys’s fraud claim.

1.         Summary Judgment on Litton’s Breach of
Contract Counterclaim

In his second issue, Keys contends the trial court erred
by granting summary judgment on Litton’s breach of contract counterclaim. 
Specifically, Keys asserts that Litton violated the Agreed Order by continuing
to report Keys’s credit and by failing to provide Keys with a separate payoff
statement as required in the Agreed Order.[3]  Keys concludes, then, that because Litton failed to
adhere to the Agreed Order, Litton could not enforce the Agreed Order against
Keys.[4] 


We review a summary
judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).  A counter-plaintiff who moves for summary judgment must
conclusively establish all of the elements of its cause of action as a matter
of law.  See Tex. R. Civ. P. 166a(a), (c).  We take all evidence
favorable to the nonmovant as true and indulge every reasonable inference and
resolve any doubts in favor of the nonmovant.  Valence Operating Co.,
164 S.W.3d at 661.  If, as here, the nonmovant relies on an affirmative defense
to oppose the summary-judgment motion, he must provide sufficient
summary-judgment evidence to create a fact issue on each element of the
defense.  See Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Tello
v. Bank One, N.A., 218 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.]
2007, no pet.). 

In his response to the motion, Keys did not contest that
he had breached the Agreed Order; rather, he argued that Litton had also
materially breached the Agreed Order, thereby making the order unenforceable. 
Keys’s contention that Litton materially breached the Agreed Order is an
affirmative defense.  See Compass Bank v. MFP Servs., Inc., 152 S.W.3d
844, 852 (Tex. App.—Dallas 2005, pet. denied).  Even if Keys can raise such an
affirmative defense in this circumstance,[5] Keys must raise a fact issue as to each element of his
affirmative defense.  See Brownlee, 665 S.W.2d at 112.  

A party breaches a contract
when it neglects or refuses to perform a contractual obligation.  Mays v.
Pierce, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet.
denied).  If the breach is material, the other party is excused from further
performance of the contract.  See Hernandez v. Gulf Group Lloyds, 875
S.W.2d 691, 692 (Tex.1994).  

In response to the motion
for summary judgment, Keys put forth an affidavit from a mortgage broker
stating that (1) she saw credit reporting by Litton Loan Servicing, L.P. about
Keys that she obtained on or about June 29, 2006; (2) the credit reporting by
Litton included serious derogatory credit reporting, including foreclosure
activity; and (3) she was unable to process a request to refinance a mortgage
for Keys based on the credit reporting that she saw on or about June 29, 2006. 
Keys also submitted his own affidavit stating, in pertinent part, that he
believed Litton had engaged in negative credit reporting, and he attached a
report from Experian, a credit agency.  Under “Status,” the report indicated
foreclosure proceedings had started with a past due amount as of February
2005.  The account history showed the last foreclosure proceeding started as of
December 2004 to February 2005.  The creditor’s statement was: “Foreclosure
proceedings started.”  The report then states that “This item was verified on
Jun [sic] 2006 and remained unchanged.”  

The Agreed Order stated
that “Litton Loan Servicing shall not report any credit reporting on Keys until
September 1, 2006.”  Contrary to Keys’s contention, the Agreed Order does not
state that Litton was required to contact crediting services to remove
any prior credit reporting from their records.  The Experian report shows that
Litton last reported on Keys’s credit in February 2005, prior to the Agreed
Order.  Litton’s summary-judgment evidence included an affidavit from a
custodian of records for Keys’s loan stating that Litton had checked its system
records and the comments logs attached to Keys’s loan account and there was no
record of either (a) any communication received from Experian or any other
credit bureau concerning Keys after February 2006; and/or (b) any communication
sent by Litton to Experian or any other credit bureau after the response to the
February 2006 communication from Experian, which was transmitted to Experian on
March 10, 2006, all prior to the Agreed Order.[6] 


The only evidence of activity
after the Agreed Order was signed is the notation on the Experian report that
the report was verified in June 2006.  First, the Agreed Order states that
Litton shall not “report” any credit reporting on Keys.  Keys’s
summary-judgment evidence does not raise a fact issue that Litton reported any
credit reporting on Keys after the Agreed Order.  Second, even if Litton
verified the information already on Experian’s report and a verification
constituted a breach of the Agreed Order, Keys’s summary-judgment evidence does
not raise a fact issue that the verification itself was the cause of any
damages rather than what was already on his report.  See Frost Nat’l Bank v.
Burge, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)
(stating elements of breach of contract claim include whether party was damaged
as a result of breach).  

Therefore, Keys’s second
issue is overruled.  

2.         Summary
Judgment on Keys’s Fraud Claim

In his third issue, Keys
contends the trial court erred by granting summary judgment on his fraud
claim.  Specifically, Keys asserts (1) the trial court’s order is “tantamount
to a dismissal for want of prosecution”; (2) the dismissal “with prejudice” was
in error; and (3) assuming the order granted a partial summary judgment on his
fraud claim, fact issues exist.

The trial court’s order of
April 9, 2007, states that “Defendant’s Second Supplement to its Supplemental
Motion for Summary Judgment and Supplemental Motion for Sanctions for Frivolous
Pleading . . . is meritorious and should be in all things granted.” There is an
asterisk after this statement with a note at the bottom of the order stating,
“The Court waited one (1) hour for plaintiff, Mr. Keys, to appear or otherwise
contact the Court, but he did not do so.  No response or opposition to the
Motion was filed.”  In the body of the order, the trial court dismissed Keys’s
common-law fraud and statutory fraud claims with prejudice. 

Keys’s argument that this
order is tantamount to a dismissal for want of prosecution is without merit. 
The order states that Litton’s motion for summary judgment is granted.  It says
nothing about dismissing for want of prosecution.[7] 
Furthermore, to the extent that “dismissal” language is appropriate in an order
granting summary judgment at all, summary judgment necessarily entails
dismissal with prejudice.  See Hyundai Motor Co. v. Alvarado, 892
S.W.2d 853, 854 (Tex. 1995) (per curiam).    

While Keys’s argument is
not entirely clear, he seems to contend the trial court also erred by granting
summary judgment on his fraud claim because evidence shows Litton signed the
Agreed Order but then continued to pursue its claims under the Note and Deed of
Trust.  

A traditional summary
judgment may be granted if the motion and summary-judgment evidence establish
there is no genuine issue of material fact and the moving party is entitled to
judgment as a matter of law.  Tex. R. Civ. P.
166a(c).  Summary judgment for a defendant is proper when the defendant
negates at least one element of each of the plaintiff’s theories of recovery,
or pleads and conclusively establishes each element of an affirmative defense. 
Sci. Spectrum, Inc. v. Martinez, 940 S.W.2d 910, 911 (Tex. 1997).

A fraud cause of action
requires a party to establish that (1) a material representation was made, (2)
the representation was false, (3) when the speaker made the representation, he
knew it was false or made it recklessly without knowledge of the truth and as a
positive assertion, (4) the speaker made it with the intention that it should
be acted upon by the party, (5) the party acted in reliance upon it, and (6)
the party thereby suffered injury.  Lundy, 260 S.W.3d at 492.  The
elements of statutory fraud are essentially identical to the elements of
common-law fraud, except that statutory fraud under Texas Business and Commerce
Code section 27.01 does not require proof of knowledge or recklessness as a
prerequisite to recovery of actual damages.  Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2009).  Keys does not
present evidence raising a genuine issue of material fact as to whether a false
representation was made.  To the contrary, the Agreed Order that he presents as
evidence explicitly states that in the event Keys did not pay the $140,000 by
September 1, 2006, Litton could enforce its lien and pursue its statutory and
contractual remedies, including foreclosure under the Deed of Trust. 

Therefore, Keys’s third
issue is overruled.    

3.         Summary Judgment
on Litton’s Attorneys’ Fees Claim

In his fourth issue, Keys
contends the trial court erred by granting Litton’s motion for summary judgment
on attorneys’ fees when Litton was not entitled to attorneys’ fees and did not
segregate the fees.[8]


a.         Entitlement
to Attorneys’ Fees       

Keys contends the trial
court erred by granting the motion for summary judgment on attorneys’ fees
because there is no legal basis for an award of fees.  

Keys filed claims for
breach of contract, declaratory judgment, negligence per se, suit to quiet
title, and fraud.  Litton counterclaimed for breach of contract and declaratory
judgment.  The trial court granted Litton’s motion for summary judgment on its
breach of contract counterclaim save and except for the required element of
damages.  With regard to damages, the trial court found a fact question existed
as to the reasonableness and necessity of Litton’s alleged attorneys’ fees and
sustained Keys’s objection to Litton’s attorneys’ fees evidence for failing to
segregate the fees between Litton’s defense against Keys’s claims and its
prosecution of its various counterclaims.  Rather than seeking attorneys’ fees
as direct damages for breach of the Agreed Order, Litton later pursued attorneys’
fees in a motion for summary judgment under Texas Civil Practice & Remedies
Code sections 37.009 and 38.001.[9]   


Texas law does not allow
the recovery of attorneys’ fees unless they are authorized by statute or
contract.  Tony Gullo Motor I, L.P. v. Chapa, 212 S.W.3d 299, 310 (Tex.
2006).  Section 38.001 of the Civil Practice and Remedies Code provides that a
successful party in a breach of contract action may recover reasonable
attorneys’ fees.  Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008).  A party may not recover
attorneys’ fees on a breach of contract claim when that party fails to recover
damages.  Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195,
201 (Tex. 2004); Green Int’l Inc. v. Solis, 951 S.W.2d 384, 390 (Tex.
1997).  

Here, the trial court
expressly granted Litton’s motion for summary judgment on its breach of
contract counterclaim save and except for the required element of damages.
Litton’s motion for summary judgment on attorneys’ fees sought fees under the
provisions of the Texas Civil Practice & Remedies Code, not as direct
damages as a result of the breach of the Agreed Order.  Because Litton had not
recovered damages on its breach of contract counterclaim, it could not recover
the attorneys’ fees pursuant to Texas Civil Practice & Remedies Code
section 38.001.  See Kenneth Leventhal & Co. v. Reeves, 978 S.W.2d
253, 257–58 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Litton also sought
attorneys’ fees in its motion for summary judgment under section 37.009 of the
Texas Civil Practice & Remedies Code.  Under section 37.009, “the court may
award costs and reasonable and necessary attorney’s fees as are equitable and
just.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 2008).  Although not entirely clear, Keys apparently
contends that Litton was not entitled to attorneys’ fees under section 37.009
because the declaratory judgment duplicated the relief already sought under
Litton’s breach of contract counterclaim.  However, the declaratory judgment
sought a declaration that U.S. Bank was the holder of a valid, enforceable
first lien on the Property, there was an amount due and owing on the Note, and
Litton could enforce the lien on Keys’s property by proceeding on the
foreclosure.  In contrast, Litton’s breach of contract counterclaim asserted
Keys breached the Agreed Order by bringing suit and Litton was entitled to sue
and recover damages, namely attorneys’ fees.  Keys’s argument that Litton could
not pursue attorneys’ fees under section 37.009 is without merit.  

We next consider whether
Litton was required to segregate its attorneys’ fees.  

b.         Segregating
Attorneys’ Fees

Keys argues that Litton was
required to segregate attorneys’ fees between claims.  Litton contends the
attorneys’ fees it sought in its motion for summary judgment on attorneys’ fees
do not require segregation because the claims, defenses, and counterclaims were
based on the same set of facts and circumstances.  

Generally, a party seeking
attorneys’ fees must segregate fees incurred in connection with a claim that
allows their recovery from fees incurred in connection with a claim for which
no such recovery is allowed.  See Chapa, 212 S.W.3d at 313–14.  Both in
its motion for summary judgment and on appeal, Litton cites to Stewart Title
Guaranty Co. v. Sterling for the proposition that when claims are dependent
upon the same set of facts or circumstances and thus are “intertwined to the
point of being inseparable,” segregating attorneys’ fees is not required.  See
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11–12 (Tex. 1991). 
However, the Texas Supreme Court modified Sterling in Tony Gullo
Motors I, L.P. v. Chapa.  212 S.W.3d at 313-14. 

In Chapa, the Texas
Supreme Court clarified that intertwined facts alone are insufficient to excuse
the failure to segregate.  Id. at 313.  The Court expressly disavowed
the prior rule that suggested a common set of underlying facts necessarily
makes all claims arising from those facts “inseparable” and thus all legal fees
recoverable.  Id. at 313–14.  It is only when discrete legal services
advance both a claim for which fees are recoverable and a claim for which fees
are unrecoverable that fees need not be segregated.  Id.  

However, if any attorneys’
fees relate solely to a claim for which attorneys’ fees are unrecoverable, a
claimant must segregate recoverable from unrecoverable fees.  Id. at 313. 
The evidence of the amount of recoverable attorneys’ fees is sufficiently
segregated if, for example, the attorney testifies that a given percentage of
the drafting time would have been necessary even if the claim for which
attorneys’ fees are not recoverable had not been asserted.  See id. at
314.  The party seeking to recover attorneys’ fees bears the burden of
demonstrating segregation is not required.  CA Partners v. Spears, 274
S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). 

We conclude that Litton did
not meet its burden under Chapa of showing it was not required to
segregate attorneys’ fees.  Litton, however, did not forfeit its right to recover
attorneys’ fees by failing to segregate them.  See 7979 Airport
Garage, L.L.C. v. Dollar Rent A Car Sys., Inc., 245 S.W.3d 488, 510 (Tex.
App.—Houston [14th Dist.] 2007, pet. denied).  The evidence it presented
regarding the total amount of attorneys’ fees it incurred is some evidence of
what the segregated amount should be.  Id.  Therefore, we sustain Keys’s
fourth issue with regard to segregating attorneys’ fees, reverse that portion
of the judgment granting the motion for summary judgment on attorneys’ fees,
sever that portion of the judgment, and remand this issue for a new trial on
attorneys’ fees.  As a result of our disposition of this issue, we do not reach
the question of whether the attorneys’ fees were reasonable.  

C.        Keys’s Attempt
to Amend His Petition

In his fifth issue, Keys
argues that the trial court erred in striking his fifth amended petition. 

The trial court’s
docket-control order of November 20, 2006, gave the parties until January 21,
2007, to amend their pleadings.  Keys filed a fifth amended petition and
request for injunctive relief on February 7, 2007.  He sought to add U.S. Bank,
N.A., the law firm Leyh & Payne, L.L.P., attorneys Steven A. Leyh and John
Barnes, and substitute trustee J. Robert MacNaughton as defendants.  In
addition, he added claims for trespass to try title against U.S. Bank for
foreclosing on the property and tortious interference and conspiracy against
the three individuals.  Litton filed a motion to strike this petition, citing
untimeliness and a “rehashing” of the issues already decided by the trial
court.  The trial court granted the motion to strike Keys’s fifth amended
petition.[10] 


We review a trial court’s
refusal to allow an amendment to the pleadings for an abuse of discretion.  See
Greenhalgh v. Serv. Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990).  We
also review a trial court’s enforcement of a scheduling order for an abuse of
discretion.  G.R.A.V.I.T.Y. Enter., Inc. v. Reece Supply Co., 177 S.W.3d
537, 542-44 (Tex. App.—Dallas 2005, no pet.).  We will not reverse a trial
court’s judgment for abuse of discretion unless the trial court acted in an
arbitrary manner, without reference to any guiding rules or principles.  Walker
v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).  It must be clear from the
record that the trial court could have reached only one contrary decision.  In
re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002).   

“Parties may amend their
pleadings . . . by filing such pleas with the clerk at such time as not to
operate as a surprise to the opposite party; provided, that any pleadings . . .
offered for filing . . . after such time as may be ordered by the judge under
Rule 166, shall be filed only after leave of the judge is obtained, which leave
shall be granted by the judge unless there is a showing that such filing will
operate as a surprise to the opposite party.”  Tex. R. Civ. P. 63.  Texas Rule of Civil Procedure
166 authorizes the trial court to enter various pre-trial orders including one
for a cut-off date on amendments to pleadings.  Tex. R. Civ. P. 166.  Even where leave of court is
required to file an amended pleading, the trial court may not refuse an amended
pleading unless: (1) the opposing party presents evidence of surprise or
prejudice; or (2) the amendment asserts a new cause of action or defense and
thus is prejudicial on its face and the opposing party objects to the amendment.
 Greenhalgh, 787 S.W.2d at 939.  A trial court’s refusal to allow an
amendment to pleadings will not be disturbed on appeal unless the complaining
party demonstrates a clear abuse of discretion.  NCS Mgmt. Corp. v. Sterling
Collision Ctrs., Inc., 108 S.W.3d 534, 536 (Tex. App.—Houston [14th Dist.]
2003, pet. denied).

Here, Keys did not seek
leave of court to file his fifth amended petition after the deadline for
amended pleadings.  The amendment added new causes of action against new
parties.  It was not unreasonable for the trial court to call a halt to an
ever-spiraling cycle of litigation.  We do not find it clear from the record
that the trial court could have reached only one contrary decision.  Therefore,
the trial court did not abuse its discretion in granting the motion to strike
Keys’s fifth amended petition.  We overrule Keys’s fifth issue.  

D.        Keys’s Request
for Sanctions

In his sixth issue, Keys
asks this Court to sanction Litton’s attorneys for allegedly failing to
disclose certain matters in the Substitute Trustee’s Deed (filed with the
official real property records), Notice of Dismissal of Lawsuits as to Lis
Pendens (filed with the official real property records), and the petition for
forcible entry and detainer filed in another court.  Keys cites Texas Rule of
Civil Procedure 13 and Texas Rule of Appellate Procedure 52.11 in support of
appellate sanctions.  Texas Rule of Civil Procedure 13 allows a trial court to
sanction attorneys who sign pleadings, motions, or other papers that are both
groundless and either brought in bad faith or for the purpose of harassment. 
Tex. R. Civ. P. 13; see also Tex. R. Civ. P. 2 (stating rules of civil
procedure shall govern procedure in justice, county, and district courts).  Texas
Rule of Appellate Procedure 52.11 allows sanction awards in original
proceedings.  See Tex. R. App. P. 52.11.  Keys has not cited proper
grounds or authority for this Court to grant appellate sanctions in this case. 
Therefore, we overrule Keys’s sixth issue.

III.  Conclusion

We affirm the judgment of
the trial court in all respects except as to the granting of Litton’s “Motion
for Summary Judgment as to Attorneys’ Fees.”  As to the award of those
attorneys’ fees, we reverse and remand this case to the trial court for further
proceedings not inconsistent with this opinion.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges, and Justices Yates and Sullivan.

 









[1] Consequently, Keys’s
following sub-issues are without merit: (1) that any counterclaims Litton had
arising out of the Note and the Deed of Trust were compulsory counterclaims of
the original lawsuit and the Agreed Order extinguished the right to bring suit
on the transaction out of which the action arose; (2) that res judicata barred
claims arising out of the same subject matter of the prior suit; (3) that the
Deed of Trust no longer exists because the trial court did not attach a copy of
it to the Agreed Order; and (4) that the trial court lacked subject-matter
jurisdiction on claims arising from the Note and Deed of Trust because that
transaction was permanently extinguished upon dismissal with prejudice.

 





[2]  Keys’s eleventh sub-issue is a paragraph setting out
various standards of review.





[3]  Keys did not raise the issue of Litton’s failure to
provide him with a separate payoff statement in the response to the motion for
summary judgment.  “Issues not expressly presented to the trial court by
written motion, answer or other response shall not be considered on appeal as
grounds for reversal.”  Tex. R. Civ. P. 166a(c). 






[4]  Keys mentions promissory estoppel, but fails to set
forth the elements or how it applies in this case.  In addition, within his
second issue, Keys states that the trial court erred by granting a declaratory
judgment in favor of Litton, but does not argue why it was error.  As a result,
these sub-issues are waived.  Tex. R. App. P.
38.1(i); Lundy, 260 S.W.3d at 503.  





[5]  If we view the Agreed Order as an agreed judgment,
some courts have held that parties to an agreed judgment may not raise
affirmative contractual defenses, including breach of the other party to excuse
performance, when doing so will abrogate the terms and obligations of the
judgment.  See Spradley v. Hutchison, 787 S.W.2d 214, 219–220 (Tex.
App.—Fort Worth 1990, writ denied) (noting split in courts of appeals over this
issue).  





[6]  The record does not include Exhibit B, which is
apparently an affidavit attached to Litton’s response and objection to Keys’s
motion for summary judgment and incorporated in its own motion for summary
judgment.  The parties do not contend the affidavit is essential to the
disposition of this issue.  If the pertinent summary-judgment evidence
considered by the trial court is not in the appellate record, we presume the
omitted evidence supports the trial court’s judgment.  See Enter. Leasing
Co. v. Barrios, 156 S.W.3d 547, 550 (Tex. 2004).  Therefore, we presume the
affidavit listed as Exhibit B supports the summary judgment in favor of Litton.





[7]  To the extent Keys claims he did not receive notice
of the summary-judgment hearing, the record contains a notice of hearing.     





[8]  Keys also asserts the trial court erred by granting
summary judgment on Litton’s declaratory-judgment counterclaim, which included
approximately $50,000 in attorneys’ fees due under the Note.  In his brief,
Keys states that the trial court erred because these attorneys’ fees were based
entirely on Litton’s own payoff statement.  However, Keys makes no argument
about this alleged error.  Where a party fails to support an issue with
argument, he waives any error on appeal.  Lundy, 260 S.W.3d at 503.  In
addition, Keys asserts Litton is not entitled to these fees because the Agreed
Order extinguished the Note and Deed of Trust.  As previously discussed in
issue one, this argument is without merit.  Consequently, we remand for further
proceedings only the attorneys’ fees sought by Litton in its “Motion for
Summary Judgment as to Attorneys’ Fees.”





[9]  Litton also cited Texas Rule of Civil Procedure 13
as a basis for its attorneys’ fees; however, the trial court did not impose
attorneys’ fees as sanctions against Keys, and Litton does not contend it did.





[10]  On July 19, 2007, Keys filed a motion for leave of
court to amend his pleadings, claiming he received no notice of the filing of
Litton’s motion to strike and stating the added claims were necessary for the
proper and complete adjudication of the case.  The trial court denied Keys’s
motion for leave of court to amend his petition to include the claim of
“trespass to try title” against U.S. Bank, N.A.  Keys does not challenge the
trial court’s denial of his motion for leave to amend his sixth amended
petition, only its granting of the motion to strike his fifth amended petition.