Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





CARLOS TORRES,


 Appellant,


v.


GSC ENTERPRISES, INC., A TEXAS
CORPORATION, and TERRY HARBIN,
INDIVIDUALLY AND AS AGENT FOR
GSC ENTERPRISES, INC, A TEXAS
CORPORATION, 


 Appellees. 

§


 


§


 


§


 


§


 


§



§

 §

No. 08-05-00321-CV



Appeal from


 120th District Court


of El Paso County, Texas


(TC # 2003-4541)




O P I N I O N



 Carlos Torres appeals from a summary judgment granted in favor of GSC Enterprises, Inc.,
a Texas Corporation, and Terry Harbin, Individually and as Agent for GSC Enterprises, Inc., a Texas
Corporation. Finding no error, we affirm.

FACTUAL SUMMARY


 Fidelity Express Entronics, a money order company, is a division of GSC Enterprises. It sells
money orders to the retail public through agents who generally operate convenience stores and check
cashing businesses. In May of 2001, Tony Carpio d/b/a Office General was one of Fidelity Express's
agents. Carpio provided money orders for sale at various locations in El Paso, including a store at
9028 Alameda. Fidelity Express's national sales manager, Terry Hair, flew to El Paso to audit
Carpio's Office General account because the home office had noted suspicious activity, including the
issuance of sequential multiples of $500 money orders. When Hair arrived at the Alameda location,
he met Appellant, Carlos Torres, who said he was purchasing the business from Carpio. Torres was
operating the business under the name Unified Services. Hair conducted an audit of the store's
money order transactions which revealed that a large number of money orders had been issued
without the receipt of any consideration from customers and without remittance of payment by
Carpio to Fidelity Express. Torres admitted to Hair during the course of the audit that he had taken
Fidelity Express money orders and deposited them into a business account without receiving money
for their issuance. The audit report reflected that $259,285.63 was owed to Fidelity Express for the
money orders.

 During the course of the audit, Special Agent Russell King of the Secret Service came into
the business because he was investigating check fraud involving Unified Services. After speaking
with Hair about his audit, King determined that probable cause existed to believe a crime had been
committed by somebody at Unified Services and he advised Hair to file a police report. At King's
request, Hair followed King to a police substation and met with Detective Lourdes Calderon. He told
Calderon that the company suspected that money orders, which had not been purchased, were being
deposited for collection into its agent's bank account, and he provided Calderon with a copy of the
audit report. That report indicated that Fidelity Express's loss could be as large as $259,285.63. 
Hair did not tell Calderon during this initial meeting that he suspected anyone in particular. Instead,
he told her that he did not know who was depositing the money orders which had not been
purchased. He also said that he was not sure whether a crime had been committed. Based on her law
enforcement experience, Calderon concluded that a crime had been committed and that Fidelity
Express had probable cause to report a crime.

 Following her meeting with Hair, Calderon began an investigation to determine the identity
of the person who had committed the crime. She contacted Fidelity Express on different occasions
to ask questions and request documentation. Based on her investigation, Calderon interviewed
Torres on November 1, 2001. In his statement, Torres described himself as the owner of Unified
Services but also said he was in the process of purchasing the business from Tony Carpio. Unified
Services cashes checks, sells money orders, and provides Western Union services. Each week,
Fidelity Express collected the money owed it from Torres' business account. In October or
November of 2000, Torres learned that one of his employees, Victor Villa, was cashing checks which
had been stolen from the U.S. Post Office. When Unified Services tried to collect on these stolen
checks, they were returned because a "stop payment" had been placed on them. Torres estimated that
his business lost $300,000 to $400,000 on the stolen checks. To replace some of the money he had
lost due to the stolen checks, Torres decided to deposit several Fidelity Express money orders into
his business account. Each money order was in the amount of $500 because Fidelity Express's policy
did not permit money orders to exceed that amount. Torres took the money orders believing he
would be able to compensate Fidelity Express at a later date. According to Torres, Carpio did not
have anything to do with the money orders being placed in the business account. At some point,
Fidelity Express withdrew $100,000 from the business account and Torres worked out an agreement
with Fidelity Express to repay them for the money orders. He had also agreed to pay interest. At
the time he made his written statement, Torres had repaid $150,000 of the $250,000 he had taken.


 Based on her investigation and Torres' written statement, Calderon concluded that probable
cause existed to believe Torres had committed a crime by knowingly misapplying money orders held
as a fiduciary in a manner that involved a substantial risk of loss to Fidelity Express, the owner of the
property. She initiated the prosecution of Torres by filing a complaint affidavit on November 29,
2001. The case was presented to the District Attorney's Office and Assistant District Attorney,
David Wilton, who determined that probable cause existed to initiate prosecution of Torres by
presenting the case to the grand jury. The grand jury indicted Appellant for misapplication of
fiduciary property. (1) Following the indictment, Torres's attorney spoke with Wilton on several
occasions in an effort to persuade him that Torres' actions were not criminal and that the case was
a civil matter. Wilton disagreed and refused to dismiss the prosecution even though he had discretion
to do so. Assistant District Attorney Steven Spitzer was subsequently assigned to prosecute the case
and he amended the indictment to add a theft charge. When the case went to trial, Spitzer abandoned
the misapplication count and went to trial on the theft count alone. A jury found Torres not guilty
on June 24, 2003. Despite the jury's verdict, both Spitzer and Calderon still believe that Torres was
guilty of theft. 

 On October 14, 2003, Torres filed suit against GSC Enterprises alleging a claim for malicious
prosecution. He filed an amended petition on July 26, 2004, adding Terry Harbin as a defendant and
adding a claim for intentional infliction of emotional distress. GSC and Harbin filed a motion for
summary judgment on both no evidence and traditional summary judgment grounds. Eight days
before the summary judgment hearing, Torres filed a second amended petition asserting a negligence
claim. Torres filed a response and attached evidence, but the trial court sustained Appellees'
objections to all of Torres' summary judgment evidence. The court also struck the second amended
petition and granted summary judgment in Harbin's and GSC's favor without specifying the grounds
for its ruling. On appeal, Torres raises one issue related to the summary judgment and another issue
related to the trial court's rulings on Appellees' objections to the second amended petition and
summary judgment evidence. Because the latter issue impacts our review of the summary judgment,
we will address it first.

OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE


AND SECOND AMENDED PETITION 



 In Issue Two, Torres challenges the trial court's rulings which struck his second amended
petition and his summary judgment evidence from consideration. He also raises arguments related
to his objections to Appellees' summary judgment evidence.

Amendment of Pleadings


 A trial court's refusal to allow an amendment to pleadings will not be disturbed on appeal
unless the complaining party demonstrates an abuse of discretion. NCS Mgmt. Corp. v. Sterling
Collision Centers, Inc., 108 S.W.3d 534, 536 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

On March 4, 2005, the trial court signed an agreed scheduling order which established the trial date
as September 30, 2005 and the deadline for filing amended pleadings as "45 days before trial." (2) 
Harbin and GSC filed their motion for summary judgment on April 29, 2005 and the motion was set
for hearing on June 2, 2005. The trial court granted Torres' motion for a continuance in order to
complete discovery and the hearing was re-set for July 5. Torres filed his second amended petition
on June 27, eight days prior to the summary judgment hearing. Harbin and GSC objected that the
second amended petition operated as a surprise to them because it added a negligence cause of action
and it was filed after the deadline to amend pleadings under the agreed scheduling order. They also
objected that the amendment was untimely under Texas Rule of Civil Procedure 63. The trial court
sustained these objections and struck the second amended petition. 

 Citing Sosa v. Central Power & Light, 909 S.W.2d 893 (Tex. 1995), Torres argues that his
second amended petition was timely filed because it was filed more than seven days prior to the
summary judgment hearing. In Sosa, the plaintiff filed an amended petition exactly one week before
a scheduled summary judgment hearing without obtaining leave of court. The trial court struck it
because the plaintiff failed to obtain leave. Rule 63 of the Texas Rules of Civil Procedure states that
"any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter
. . . shall be filed only after leave of the judge is obtained." Tex.R.Civ.P. 63. Applying Rule 4 of the
Rules of Civil Procedure to the computation of time under Rule 63, the Supreme Court determined
that the amended pleading was filed timely because the day on which the pleading is filed is not
counted but the last day of the period is included in the computation. Sosa, 909 S.W.2d at 895. The
court disapproved of several cases holding that Rule 63 requires seven days to elapse between the
date of filing and the date of hearing. Id.

 Torres is correct that under Rule 63, he was not required to obtain leave of court to file his
second amended petition eight days before the summary judgment hearing. The parties had agreed,
however, that the deadline for filing amended pleadings was 45 days before trial. Therefore, the Rule
63 deadline is inapplicable. Torres next argues that he timely filed his amended pleading because he
filed it on June 27, more than 45 days before the September 30, 2005 trial date established in the
agreed scheduling order. Harbin and GSC contend that a summary judgment hearing is a trial, and
therefore, the deadline for filing amended pleadings under the scheduling order was 45 days before
the summary judgment hearing. The issue, then, is whether the scheduling order established static
or flexible deadlines.

 There are only two fixed dates established in the scheduling order: the trial date of September
30, 2005 and the deadline for joining additional parties, "30 days from date of this Order." The rest
of the deadlines are stated in terms of so many days "before trial." If the parties had intended for the
deadline for filing amended pleadings to be 45 days before September 30, 2005, the parties could
have easily stated the deadline as August 16, 2005. By stating the deadline as 45 days before trial,
we believe the parties intended for the dates to be flexible and to operate from the date of the trial,
whether it was held on September 30 or some other date. (3)

 A summary judgment hearing is considered a trial when determining whether amended
pleadings are timely filed. Fletcher v. Edwards, 26 S.W.3d 66, 74 (Tex.App.--Waco 2000, pet. 
denied), citing Sosa, 909 S.W.2d at 895. The summary judgment hearing was held on July 5, 2005. 
Therefore, the date for filing amended pleadings was May 23, 2005. Because Torres filed his
amended pleadings only eight days before the summary judgment hearing and without leave of court, 

we conclude that the trial court did not abuse its discretion by striking the second amended petition.

Exclusion of Torres'


Summary Judgment Evidence


 Torres contends that the trial court erred by striking his summary judgment evidence and not
giving him an opportunity to amend. Harbin and GSC objected to the affidavit of Antonio Carpio
on the grounds that the affidavit did not establish that he was competent to testify, it contradicted
Torres' sworn testimony, it contained conclusory statements, and it contained hearsay. Appellees
also objected to all of the exhibits because they were not properly authenticated.

 Torres lists the objections Appellees' made to Carpio's affidavit but he does not provide any
argument or authority supporting his contention that the trial court erred by sustaining any or all of
the objections. This portion of the issue has been waived. See Tex.R.App.P. 38.1(h)(brief must
contain clear and concise argument for contentions made, with appropriate citations to authorities
and to the record); City of Midland v. Sullivan, 33 S.W.3d 1, 10 n.6 (Tex.App.--El Paso 2000, pet.
dism'd w.o.j.)(appellant failed to brief complaint and thus waived appellate review of issue).

 Torres also contends that the trial court should have given him an opportunity to amend
Carpio's affidavit because the objections to the affidavit were based on defects of form. Rule 166a(f)
provides that "[d]efects in the form of affidavits or attachments will not be grounds for reversal unless
specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." 
Tex.R.Civ.P. 166a(f). Although Torres characterizes all of Appellees' objections to Carpio's
affidavit as pertaining to defects of form, at least one of the objections is addressed to a defect of
substance. Conclusory statements are defects of substance in an affidavit. Green v. Industrial
Specialty Contractors, Inc., 1 S.W.3d 126, 130 (Tex.App.--Houston [1st Dist.] 1999, no pet.). 
Torres did not request a continuance or seek leave to amend the Carpio affidavit. When a summary
judgment movant objects to summary judgment evidence proffered by the nonmovant, the burden lies
upon the nonmovant to request relief under Rule 166a(f), including a continuance or the opportunity
to cure any formal defects in the nonmovant's summary judgment evidence. Coleman v. Woolf, 129
S.W.3d 744, 750 (Tex.App.--Fort Worth 2004, no pet.). By not taking any action in the trial court
to indicate that he desired the opportunity to correct the defects in the Carpio affidavit, Torres failed
to preserve this issue for our review.

 Finally, Torres asserts that the trial court erred in sustaining Appellees' objection that his
summary judgment evidence was not properly authenticated and by failing to provide him with an
opportunity to amend. Citing Rule 166a(d), Torres argues that his exhibits were admissible summary
judgment evidence as discovery products. Discovery products may be used as summary judgment
evidence if copies of the material and appendices are filed and served on all parties together with a
statement of intent to use the specified discovery as summary judgment proofs at least seven days
before the hearing if such proofs are to be used to oppose the summary judgment. Tex.R.Civ.P.
166a(d). The record does not establish that Torres satisfied Rule 166a(d). In his summary judgment
response, Torres did not identify any of the exhibits as discovery materials or state his intent to use
the specified discovery as summary judgment proof. Further, at least some of the summary judgment
evidence does not appear to be discovery materials. Torres has not established that the trial court
abused its discretion by excluding the summary judgment evidence. As was the case with the Carpio
affidavit, Torres did not request an opportunity to amend his summary judgment evidence. 
Consequently, he has not preserved that argument.


Torres Objections to


Appellees' Summary Judgment Evidence


 Eight days prior to the summary judgment hearing, Torres filed four motions entitled Motion
for Daubert Hearing Re: Steve Spitzer, Motion for Daubert Hearing Re: Russel King, Motion for
Daubert Hearing Re: Lourdes Calderon, and Motion for Daubert Hearing Re: David Wilton. By
these motions, Torres requested a hearing to determine the qualifications of these four expert
witnesses prior to the summary judgment hearing. He urged that Appellees would be unable to
establish that the witnesses were qualified as experts and that their testimony should be excluded. 
Torres also filed written objections to the excerpts of Lourdes Calderon's trial testimony and to her
affidavit, and to the affidavits of Terry Harbin and David Wilton. The record does not establish that
the trial court ruled, explicitly or implicitly, on Torres' motions for Daubert hearings or on his
objections to the summary judgment evidence. Failure to obtain written rulings on objections to
summary judgment evidence waives the issue, unless the record reflects an implicit ruling by the trial
court. Strunk v. Belt Line Road Realty Co., 225 S.W.3d 91, 99 (Tex.App.--El Paso 2005, no pet.);
Tex.R.App.P. 33.1(a)(2)(A)(trial court must either expressly or implicitly rule on an objection in
order for a complaint to be preserved for review). For there to be an "implicit" ruling, there must be
something in the record indicating that the trial court ruled on the objections, other than the mere
granting of the motion for summary judgment. Strunk, 225 S.W.3d at 99. Torres' objections to
Appellees' summary judgment evidence are not preserved for our review. Issue Two is overruled.

TRADITIONAL SUMMARY JUDGMENT


 In Issue One, Torres contends the trial court erred by granting summary judgment in
Appellees' favor on his malicious prosecution and intentional infliction of emotional distress claims.

The standard of review for traditional summary judgment is well established. Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of
showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.
Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005); Duran v. Furr's Supermarkets, Inc., 921
S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant will
be taken as true in deciding whether there is a disputed issue of material fact. Fort Worth
Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004); Duran, 921 S.W.2d at 784. All
reasonable inferences, including any doubts, must be resolved in favor of the non-movant. Id.; 
Duran, 921 S.W.2d at 784. The question on appeal is not whether the summary judgment proof
raises fact issues as to required elements of the movant's claim, but whether the summary judgment
proof establishes there is no genuine issue of material fact as a matter of law as to one or more
elements of the movant's claim. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970);
Duran, 921 S.W.2d at 784.

 When the movant is the defendant and provides summary judgment evidence disproving at
least one essential element of the plaintiff's cause of action, summary judgment should be granted. 
Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Provencio v. Paradigm
Media, Inc., 44 S.W.3d 677, 680 (Tex.App.--El Paso 2001, no pet.). Likewise, a defendant who
conclusively establishes each element of an affirmative defense is entitled to summary judgment. Id.;
Provencio, 44 S.W.3d at 680. If this burden is met by the defendant, then the plaintiff must raise a
genuine issue of material fact on the negated element of the cause of action or must produce evidence
raising a general issue of material fact in avoidance of the affirmative defense. Provencio, 44 S.W.3d
at 680. Where the trial court's judgment does not specify the ground or grounds relied upon for its
ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Garcia v. El Paso Ltd. Partnership, 203 S.W.3d 432,
435 (Tex.App.--El Paso 2006, no pet.).

Harbin -- Statute of Limitations


 Harbin moved for summary judgment on the ground that the malicious prosecution claim was
barred by the statute of limitations. Torres has not addressed this ground for summary judgment in
his brief.

 A defendant moving for summary judgment on the affirmative defense of limitations has the
burden to conclusively establish that defense. KPMG Peat Marwick v. Harrison County Housing
Finance Corp ., 988 S.W.2d 746, 748 (Tex. 1999). The defendant must (1) conclusively prove when
the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled or
otherwise raised. Id. If the movant establishes that the statute of limitations bars the action, the
non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute
of limitations. Id. The limitations period for a malicious prosecution suit is one year. 
Tex.Civ.Prac.& Rem.Code Ann. §16.002(a)(Vernon 2002). Limitations begin to run when the
criminal prosecution is terminated. Patrick v. Howard, 904 S.W.2d 941, 943 (Tex.App.--Austin
1995, no writ). Here, the prosecution terminated when the jury returned a not-guilty verdict on
July 9, 2003. Accordingly, Torres was required to file his malicious prosecution claim against Harbin
on or before July 9, 2004. He did not file it until July 26, 2004. Harbin conclusively established that
the cause of action accrued more than one year before Torres filed suit and Torres did not carry his
burden of adducing summary judgment evidence raising a fact issue in avoidance of the statute of
limitations. The trial court properly granted summary judgment in favor of Harbin on the malicious
prosecution claim.

Malicious Prosecution Claim Against GSC


 GSC and Harbin sought summary judgment on the ground that they did not initiate or procure
the prosecution of Torres and they had probable cause to report a crime. A plaintiff in a malicious
criminal prosecution claim must establish (1) the commencement of a criminal prosecution against
the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination
of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable
cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. Richey v.
Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997).

 A defendant does not procure a prosecution if the decision whether to prosecute is left to the
discretion of another person, including a law enforcement official or the grand jury, unless the person
provides information which he knows is false. King v. Graham, 126 S.W.3d 75, 76 (Tex. 2003);
Browning-Ferris Industries, Inc. v. Lieck, 881 S.W.2d 288, 293 (Tex. 1994). The plaintiff must also
prove that the false information caused the criminal prosecution. King, 126 S.W.3d at 76; Lieck, 881
S.W.2d at 293. In other words, there must be proof that the prosecutor acted based on the false
information and that but for such false information the decision would not have been made. King,
126 S.W.3d at 76.

 The summary judgment evidence conclusively established that the criminal prosecution against
Torres was initiated by Lourdes Calderon filing a formal criminal complaint against Torres. GSC and
Harbin offered summary judgment evidence that the decision whether to prosecute Torres was left
to the discretion of Calderon, the District Attorney's Office, and the grand jury. Appellees offered
evidence that they did not provide false information and the assistant district attorneys did not act on
any false information in prosecuting the case against Torres. Thus, Appellees conclusively negated
the an essential element of the malicious prosecution claim. Torres failed to offer summary judgment
evidence creating a fact issue on this element. The trial court properly granted summary judgment
in favor of Harbin and GSC on this cause of action.

Intentional Infliction of Emotional Distress


 To recover damages for intentional infliction of emotional distress, a plaintiff must establish
that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and
outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional
distress suffered by the plaintiff was severe. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735,
740 (Tex. 2003); Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). To be extreme and
outrageous, a defendant's conduct must be so outrageous in character, and so extreme in degree,
as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). 
Whether a defendant's conduct may reasonably be regarded as extreme and outrageous is a question
of law which we review de novo. Wornick Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993).

 The summary judgment evidence established that GSC and Harbin reported to law
enforcement authorities that they believed a crime had been committed. In doing so, they were
asserting a legal right to report that somebody had misappropriated more than $250,000 from
Fidelity Express. They did not file a complaint against Torres or any particular person, and Torres
was not a suspect until he admitted to Calderon that he had taken the money orders and deposited
them into his business account. There is no liability for intentional infliction of emotional
distress where an actor does no more than insist on his legal rights. Lang v. City of Nacogdoches,
942 S.W.2d 752, 760 (Tex.App.--Tyler 1997, pet. denied). The summary judgment evidence
conclusively established that Appellees' conduct did not constitute extreme and outrageous conduct. 
Because GSC and Harbin disproved an essential element of Torres' intentional infliction of
emotional distress cause of action, the trial court properly granted summary judgment in their favor. 
We therefore overrule Issue One and affirm the judgment of the trial court.


October 11, 2007 
 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.

1. Tex.Penal Code Ann. § 32.45 (Vernon Supp. 2006).
2. The order also established deadlines for discovery, expert designation, and mediation. 
3. We recognize that there is a potential for conflict between the amended pleading deadline established in
the agreed scheduling order and the Rules of Civil Procedure. For instance, GSC and Harbin filed their motion for
summary judgment on April 29, 2005 and the court initially set it for hearing on June 2, 2005, only thirty-four days
after the summary judgment motion was filed. While the setting complied with Tex.R.Civ.P. 166a(c) because it was
more than twenty-one days after the motion for summary judgment was filed, holding the hearing on this date would
have effectively denied Torres the ability to amend his pleadings because he could not have filed his amended pleadings
by the agreed deadline. If the summary judgment hearing had been held on June 2, 2005 and Torres had been denied
the ability to amend his pleadings, we believe Torres would have had a valid complaint provided he preserved the issue
by objecting and seeking a continuance on that specific ground. Under those circumstances, our holding on this issue
would likely be different. Torres sought and obtained a continuance for a different reason and ultimately had more
than forty-five days' notice of the trial setting. Consequently, Torres had ample opportunity to file his second amended
petition by the deadline in the agreed scheduling order. Thus, there was no conflict between the agreed scheduling
order and any rule of civil procedure.