COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

JOEL CISNEROS,                                                      No. 08-09-00096-CR

§

　　　　　Appellant,                                          Appeal from

§

v.                                                                          120th District Court

§

THE STATE OF TEXAS,                                       of El Paso County, Texas

§

　　　　　Appellee.                                            (TC # 20070D05189)

§

## O P I N I O N

Joel Cisneros was charged by indictment with aggravated assault with a deadly weapon. The jury returned a verdict of guilty and assessed punishment at five years' imprisonment. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

The record reveals the following accounts of the assault in question. Gail Cornwell was partying with Ricky and Kenny Hunt during the night and morning of the incident. She was in the home of Ausencio Casas when Ricky and Kenny walked in. Ricky approached Gail and tore her shirt. Ausencio intervened. Gail went into the kitchen and heard a scuffle break out in the living room. Ricky and Kenny then left the house. Gail returned to the living room and saw Ausencio standing by the door. He left the house and Gail drove away in her car.

Ausencio Casas is Appellant's father-in-law. On June 18, 2007, Gail Cornwell was at his house. Around 4 or 5 in the evening, Ricky and Kenny Hunt showed up. Ricky immediately went to Gail and grabbed her by the shirt collar and said, "You're coming with us, bitch." Ausencio got in between the two and was "spanked around a bit." After Kenny and Ricky left, Ausencio grabbed

his cane and went after them. He caught up with them approximately two blocks from his house. Ausencio and Ricky then got into another altercation. During the altercation, Ausencio heard a car slam on its brakes and a door open. He then heard Appellant's voice. When Appellant jumped out of the vehicle, Ricky took a step or two toward him and planted himself in a linebacker position ready to tackle. Ausencio next recalled that Ricky went down to the ground. Ausencio saw a pistol and as Ricky went down, Ricky knocked Appellant's right hand into the weapon and the weapon discharged into the ground. Ausencio then got back into the car with Appellant and drove to Appellant's house. According to Ausencio, only one shot was fired.

Maria Carter was standing in her driveway when she noticed two black men walking and laughing on her street. She then saw a dark, navy blue SUV come to a screeching halt near the two men. Appellant looked out of the window yelled to the two men, "What are you being funny? Is this funny?" The two black men were not armed or carrying anything. Appellant then got out of the car and went after one of the men. Appellant grabbed him by the shirt collar and "dragged him to the middle of the street and he was pound-fisting him with a closed-fist hand." The man was on the ground on his back. Appellant was pounding him with his fist in the face. The man on the ground was trying to prevent Appellant from hitting him.

Maria observed two other passengers in the SUV--a woman and another Hispanic male. The male came around the back with a golf club in his hand and began swinging it. He hit the man on the ground with the golf club a couple of times. Appellant then moved into the driver's side and pulled a revolver out of the car. He appeared to be trying to shoot the man on the ground in the head. The first shot went awry. Appellant shot twice more, with one of the shots striking a neighbor's car. Maria heard a total of four shots. The two black men were not armed at any point. When the firing stopped, Appellant let the man go. Appellant stood in his car and told Maria and her husband,

"Yeah, what are you going to do?" Appellant still had his gun in his hand. Appellant then drove away with the other Hispanic male and the woman. Maria called 911but Appellant left the scene before the police arrived.

Donnice Carter, Maria's husband, testified he was in his backyard when his wife called, "They're shooting. They're firing out here." Donnice went to his front yard and heard three shots. The shots sounded like they came from a large caliber gun. He saw the SUV headed east on Dearborne Street moving at a slow pace.

Araceli Turner noticed an argument in the middle of her street. A vehicle stopped and she heard yelling. An Hispanic male, the driver of the vehicle, confronted a black man walking in the street. Araceli could only recall that the driver was standing over the body of the black man, fighting with him on the ground. At that point, another gentleman came out of the vehicle with a shiny object. Araceli then saw the driver with a gun shooting in the direction of the black man.

Sandrine Patton was in the Carters' driveway picking up her children on the night of the incident. She noticed two gentlemen walking down the street and then she heard tires screeching. Three individuals jumped out of the vehicle, two males and a female. The driver, identified as Appellant, said something to the two black men and then ran up and started beating on one of them. Sandrine turned to say something to her children, and then she heard gunshots. She called 911. Appellant, the other Hispanic male, and the female then got back into the vehicle and drove by in a slow, intimidating manner. Appellant asked her, "What are you looking at? What are you going to do?"

**CHARGE ERROR**

Appellant brings eleven issues for review complaining of charge error. Charge error is reviewed on appeal by determining whether error occurred, and if so, whether that error caused

sufficient harm to require reversal. *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex.Crim.App.1996). The degree of harm necessary for reversal depends on whether the error was preserved. *Id*. at 171. Preserved error will require reversal provided the error is not harmless, meaning any harm present requires reversal. *Id*. When error is not preserved, egregious harm must be shown. *Id*. Egregious harm affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id*. In conducting a harm analysis, the reviewing court may consider the following four factors: the charge itself; the state of the evidence including contested issues and the weight of the probative evidence; arguments of counsel; and any other relevant information revealed by the record. *Id*.

*Threats as Justifiable Force*

In Issues One and Two, Appellant complains that the trial court should have given requested instructions concerning threats as justifiable force. His proposed jury instruction number five read:

> The threat of force is justified when the use of force is justified by this chapter. For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

Proposed jury instruction six read:

Now, if you find from the evidence beyond a reasonable doubt that on June 18, 2007 Joel Cisneros did intentionally and knowingly threaten Ricky Hunt with a deadly weapon as alleged, but you further find from the evidence, or have a reasonable doubt thereof, that viewed from the stand point of Joel Cisneros at the time, that the production of the weapon is limited to creating a apprehension that he would use deadly force if necessary, or if you have a reasonable doubt as to whether or not Joel Cisneros produced the weapon for the limited propose of creating an apprehension that he would use deadly force, then you should give Joel Cisneros the benefit of that doubt and say by your verdict 'Not Guilty'.

Instructions five and six are modeled after Section 9.04 of the Penal Code, which provides:

The threat of force is justified when the use of force is justified by this chapter. For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

TEX.PENAL CODE ANN. § 9.04 (Vernon 2003). The State argues that Section 9.04 does not create a justification or defense independent of the other provisions of Chapter 9. Appellant concedes that Texas case law does not provide support for his argument.

The San Antonio Court of Appeals has addressed this specific issue in an unpublished opinion. *Smith v. State*, No. 04-95-00337-CR, 1997 WL 94151, at *1 (Tex.App.--San Antonio, pet. ref'd)(not designated for publication). There, the appellant was convicted of aggravated assault. *Id*. The trial court granted requested instructions on self-defense, apparent danger, and defense-of- third-persons. *Id*. But Smith argued that the court should have given a separate instruction under Section 9.04 because it does not require the actor to retreat before threatening to use deadly force. *Id*. The appellate court concluded that Smith had misconstrued Section 9.04. *Id*. It relied on the statutory language that "The threat of force is justified when the use of force is justified by this chapter." *Id*. Section 9.04 must incorporate the other sections of Chapter 9 that justify the use of force. In *Smith*, the sections incorporated were Sections 9.31 and 9.32 dealing with self-defense. *Id*; *see also Davis v. State*, 22 S.W.3d 638, 640 (Tex.App.--Waco 2000, pet. ref'd)(finding that use of knife was threat

of force under Section 9.04 and then using Section 9.31 to see if it was justified); *Kirkpatrick v. State*, 633 S.W.2d 357, 358-359 (Tex.App.--Fort Worth 1982, pet. ref'd)(applying Section 9.04 in conjunction with Sections 9.31 and 9.32).

We agree with the analysis of our sister court. Because Appellant's requested instructions based on Section 9.04 were not used in conjunction with other sections of Chapter 9, we must conclude that the trial court did not commit charge error. We overrule Issues One and Two.

*Waiver of Appellate Review*

An appellant's brief must contain a clear and concise argument for the contention made, with appropriate citations to authorities and to the record. TEX.R.APP.P. 38.1(h); *see Torres v. GSC Enterprises, Inc.*, 242 S.W.3d 553, 559 (Tex.App.--El Paso 2007, no pet.)(brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to the record); *City of Midland v. Sullivan*, 33 S.W.3d 1, 10 n.6 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.)(appellant failed to brief complaint and thus waived appellate review). An appellant waives error when it does not provide appropriate citations to authorities or to the record. *In re M.J.G.*, 248 S.W.3d 753, 760 (Tex.App.--Fort Worth 2008, no pet.); *Torres*, 242 S.W.3d at 559. We construe the Rules of Appellate Procedure liberally, but an appellate court has no duty to search the record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid. *In re M.J.G.*, 248 S.W.3d at 760; *Dallas Independent School District v. Finlan*, 27 S.W.3d 220, 237 (Tex.App.--Dallas 2000, pet. denied). An appellate court has discretion to find an issue is waived due to inadequate briefing. *Fredonia State Bank v. General American Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994).

We reluctantly conclude that Appellant has inadequately briefed Issues Three, Four, Five, Six, Seven, Eight, and Eleven. His brief does not contain any of the governing principles of self-

defense or defense-of-a-third-person. It merely recites the standard of review on instructing the jury on defensive issues and contains extensive quotations from the record followed by a conclusory statement that:

> All of the foregoing testimony, a large part of which was elicited by the State itself, seen in the light most favorable to the Defense, Wood, 271 S.W.3d at 333, amply supports the giving of Defensive charges relating to Threat of deadly force, Defense of a Third Person, and self Defense, Mistake of Fact, Cain, 549 S.W.2d at 713.

Appellant has wholly failed to identify the elements of self-defense or defense-of-a-third-person, or to analyze the evidence with respect to these elements.

Nor does Appellant's brief contain any of the governing legal principles on mistake of fact. The State correctly points out that Appellant does not identify his mistaken belief, cite to evidence of his mistaken belief in the record, nor explain how his mistaken belief negated his culpability. His argument regarding a mistake of fact instruction is purely conclusory.

Issues Seven, Eight, and Eleven, are not addressed at all in the body of Appellant's brief. These three issues relate to a combination of threat as to self-defense, a combination of threat as to self-defense of a third person, and combination of mistake of fact and defense of a third person. The only mention of these issues is in the list of issues presented for review. Appellant's brief contains no argument on these issues or citation to legal authority.

Because Appellant has failed to adequately brief these seven issues, he presents nothing for review. Accordingly, we overrule Issues Three, Four, Five, Six, Seven, Eight, and Eleven.

*Preservation of Error*

In Issues Nine and Ten, Appellant contends that the trial court created egregious harm by failing to instruct the jury with a combination of threat of deadly force and defense of third person and failing to instruct the jury with a combination of threat of deadly force and self defense. The State argues that these issues are not preserved for appellant review because Appellant's requested instructions did not alert the court to those particular theories. Specifically, Appellant's requested instructions on threats as justifiable force were too general to preserve combination of threat as justifiable force and self-defense; threat as justifiable force and defense-of-a-third-person. We agree with the State.

In *Posey v. State*, the Court of Criminal Appeals held that a trial court is not statutorily required to *sua sponte* instruct the jury on a mistake of fact "defensive issue" because a "defensive issue" is not "'applicable to the case' . . . unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge." 966 S.W.2d 57, 62 (Tex.Crim.App. 1998). It is clear from the record that Appellant did not request instructions that combined threats as justifiable force with self-defense and defense-of-a-third-person. Consequently, the trial court had no duty to include those instructions in the charge. We overrule Issues Nine and Ten and affirm the judgment of the trial court.

July 30, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)