

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00274-CV

Adolfo F. **RODRIGUEZ**,
Appellant

v.

**CITY OF POTEET**,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 11-07-0736-CVA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  February 26, 2014

AFFIRMED

The appellant, Adolfo Rodriguez, sued the City of Poteet for unlawful retaliation and age discrimination. The trial court granted the City's motion for traditional summary judgment. On appeal, Rodriguez contends the trial court erred in excluding several affidavits and an unauthenticated statement. He also claims fact issues precluded summary judgment. We affirm the trial court's judgment.

**BACKGROUND**

Rodriguez was employed by the City of Poteet as the Director of Public Works. Following a salary reduction, Rodriguez initiated an age discrimination lawsuit against the City in 2008. In 2009, the suit was settled and Rodriguez continued his employment with the City. In March of 2010, two of Rodriguez's subordinate employees, Joe Bermudez and Jose Mendoza, filed written complaints with the city administrator, LaNell Matthews, alleging that Rodriguez made inappropriate sexual comments to them on multiple occasions. Following a request from Matthews, the city attorney retained outside counsel to conduct an independent investigation of the alleged incident. During the investigation, Rodriguez was placed on paid administrative leave.

The investigation concluded that Rodriguez had violated the City's policy prohibiting sexual harassment when he made "harassing comments and gestures" to subordinate employees on a regular basis. Specifically, the investigator found that on March 3, 2010, Rodriguez made a comment suggesting that Bermudez and Mendoza had engaged in oral sex. Additionally, the investigator found that in the preceding years, Rodriguez violated the anti-harassment policy when he: (1) grabbed his own genitals while saying "grab this"; (2) made inappropriate noises when someone would bend over suggesting that the person was passing gas or would make thrusting gestures suggesting the person was being sodomized; (3) made references in Spanish as well as hand gestures to a person's anus, "ass", or sodomy; (4) made a comment to a third party that Bermudez would excel at oral sex because of his lack of teeth; and (5) made inappropriate comments about Mendoza's sexual relations with Mendoza's wife. Citing the potential legal liability created by Rodriguez's conduct, the independent investigator's report recommended Rodriguez's termination.

Matthews submitted the investigator's recommendation to the Poteet City Council. On March 30, 2010, the city council voted to terminate Rodriguez's employment.

**EXCLUSION OF EVIDENCE**

*A. Standard of Review*

We review the trial court's admission or exclusion of summary judgment evidence for an abuse of discretion. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles." *Blake v. Dorado*, 211 S.W.3d 429, 432 (Tex. App.—El Paso 2006, no pet.).

*B. Affidavits*

Rodriguez's first issue on appeal is that the trial court erred when it failed to consider the affidavits of Rosalinda De La Fuente and Gloria Soliz and the declaration of Cecilia Hurtado, which were attached to his response to the City's motion for summary judgment. The hearing on the City's motion was conducted on January 28, 2013. On January 18, 2013, Rodriguez attempted to file his response to the City's motion with the Atascosa County District Clerk by facsimile transmission. The district clerk's office called Rodriguez's attorney and informed him that local rules did not permit a filing by facsimile. Rodriguez sent the response to the district clerk by Federal Express. The district clerk received the response on January 22, 2013 and file-marked it the same day.

The City argues that the affidavits were not timely filed with the district clerk because they were submitted by facsimile, which is not permitted by local rules. Alternatively, the City argues that significant portions of the affidavits were improper because they were not based on personal knowledge and contained hearsay.

Rodriguez argues that the affidavits were timely filed because in addition to being faxed, they were also sent to the district clerk by Federal Express. The record contains a Federal Express delivery confirmation, showing a delivery to the Atascosa County Courthouse on January 22,

2013. Rodriguez contends that the filing by Federal Express was timely because the court observed the Martin Luther King, Jr. holiday on January 21, 2013. Alternatively, Rodriguez argues that his facsimile "conditionally filed" the affidavits with the district clerk on January 18, 2013 and that they were effectively filed on January 22, 2013 when they were delivered by Federal Express.

"Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX. R. CIV. P. 166a(c). A written response or opposing affidavits filed by a non-movant six days prior to the summary judgment hearing is timely filed if the seventh day prior to the hearing is a legal holiday. *Hammonds v. Thomas*, 770 S.W.2d 1, 2 (Tex. App.—Texarkana 1989, no writ); TEX. R. CIV. P. 4. A document is "filed" when it is "put under the custody or control" of the clerk of the court, regardless of when it is file-marked. *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1993) (per curiam); *see also Pipkin v. Kroger Texas, L.P.*, 383 S.W.3d 655, 666 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see also* TEX. R. CIV. P. 74. However, a court shall not accept electronically transmitted filings unless its local rules permitting such filings have been approved by the Texas Supreme Court. TEX. GOV'T CODE ANN. §§ 51.803, .807 (West 2013); TEX. R. CIV. P. 3a(3); *Gantan v. Fed. Nat. Mortg. Ass'n*, No. 03-13-00290-CV, 2013 WL 3009250, at*1 (Tex. App.—Austin Jun. 7, 2013, no pet.) (mem. op.).

Rodriguez's January 18, 2013 facsimile filing was ineffective because the local rules of the Atascosa County District Courts did not allow for electronic filing. Because of the legal holiday on January 21, 2013, Rodriguez could have timely filed his response and affidavits on January 22, 2013. However, Rodriguez has failed to establish that the affidavits were "put under the custody or control" of the clerk on January 22, 2013. Although Rodriguez's response was file-marked on January 22, 2013, the court's record does not show that the affidavits were attached to the response or otherwise filed on or before that day. Indeed, the list of exhibits in the response itself does not

include any reference to the affidavits in question. The affidavits do not appear in the court's record until March 4, 2013, when Rodriguez attached them to his motion for reconsideration or new trial. Additionally, Rodriguez's Federal Express confirmation does not establish that the affidavits were delivered on January 22, 2013; it only establishes that a package was delivered on that day. Accordingly, Rodriguez has not established that the affidavits were timely filed, and the trial court did not err by not considering them.

### C. Statement of Mark Gomez

In his second issue on appeal, Rodriguez contends that the trial court erred when it excluded a written statement by Mark Gomez after the City objected that the statement was not properly authenticated. Specifically, the City argued that the statement was unsworn, did not establish Gomez as a competent witness, and contained inadmissible hearsay. Rodriguez asserts that the statement was self-authenticated because he received it from the City during discovery. Rodriguez also complains that the trial court did not give him an opportunity to amend the statement and failed to consider the difficulty of obtaining a more formal statement when it was evident that Gomez was hesitant to cooperate.

An affidavit may not be considered as summary judgment evidence unless it meets the statutory requirements of an affidavit. *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 316 (Tex. 2012) (per curiam); *see* TEX. R. CIV. P. 166a(f). Among those statutory requirements is the requirement that the affidavit be "sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX. GOV'T CODE ANN. § 312.011(1) (West 2013). Although the affidavit need not contain a jurat, "the record must contain some evidence that the purported affidavit was sworn to" by the affiant. *Mansions in the Forest*, 365 S.W.3d at 317. When a party produces a document in response to written discovery, however, the document is self-authenticated for use against that party in any pretrial

proceeding or at trial unless the party objects to the authenticity of the document, either on the record or in writing, within ten days of becoming actually aware that the document will be used. TEX. R. CIV. P. 193.7; *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 451–52 (Tex. App.—Dallas 2002, no pet.). The objecting party must state a "specific basis" for the objection. TEX. R. CIV. P. 193.7. Following an objection, the party attempting to use the document "should be given a reasonable opportunity to establish its authenticity." *Id.*

The statement at issue was self-authenticated under Texas Rule of Civil Procedure 193.7 because it was produced during discovery by the City and was offered by Rodriguez against the City; however, the City timely and specifically objected to the authenticity of the statement when it objected on the record during the January 28, 2013 hearing. Although Rodriguez contends that the City's objection was related to defects in the form of the affidavit and not the authenticity of Gomez as the author of the statement, the City specifically objected that the statement was unsworn. Thus, the trial court properly sustained the objection because the statement was unsworn and did not meet the statutory requirements of an affidavit.

Although Rule 193.7 provides that Rodriguez should have been given a reasonable opportunity to establish the statement's authenticity, Rodriguez did not request such an opportunity. "When a summary judgment movant objects to summary judgment evidence proffered by the nonmovant, the burden lies upon the nonmovant to request relief under Rule 166a(f), including a continuance or the opportunity to cure any formal defects in the nonmovant's summary judgment evidence." *Torres v. GSC Enters., Inc.*, 242 S.W.3d 553, 560 (Tex. App.—El Paso 2007, no pet.); *see* TEX. R. CIV. P. 166a(f). In this case, Rodriguez failed to request a continuance or leave of court to properly authenticate the statement. Accordingly, Rodriguez was not entitled to any additional opportunity to establish the statement's authenticity. *Torres*, 242

S.W.3d at 559–60; *Coleman v. Woolf*, 129 S.W.3d 744, 750 (Tex. App.—Fort Worth 2004, no pet.).

## SUMMARY JUDGMENT

Rodriguez argues summary judgment was precluded by the existence of fact issues related to whether the City acted on the complaints against Rodriguez in good faith and whether the City's reason for termination was a pretext for retaliation and age discrimination.

### A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex 2004). A traditional summary judgment movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). The movant must conclusively negate at least one essential element of the plaintiff's cause of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If the movant satisfies this burden, the burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact to defeat summary judgment. *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

Under the Texas Commission on Human Rights Act (TCHRA), an employer commits an unlawful employment practice if the employer retaliates against a person who makes or files a charge of discrimination. TEX. LABOR CODE ANN. § 21.055 (West 2006); *City of Waco v. Lopez*,

259 S.W.3d 147, 150 (Tex. 2008). Discrimination because of age is also an unlawful employment practice under the TCHRA. TEX. LABOR CODE ANN. § 21.051 (West 2006); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633 (Tex. 2012). A plaintiff may prove retaliatory or discriminatory intent by offering direct evidence or by raising an inference of discrimination using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Garcia*, 372 S.W.3d at 634.

Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.). If a plaintiff meets this burden, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action. *Id*. The burden then rests with the plaintiff to "present proof that the stated reason was pretextual." *Id*. When reviewing a claim under the TCHRA, we may look to analogous federal statutes and the cases interpreting them. *Garcia*, 372 S.W.3d at 633–34; *see* TEX. LABOR CODE ANN. § 21.001(1) (West 2006).

*B. Legitimate, Non-Discriminatory and Non-Retaliatory Reason*

We will assume, without deciding, that the evidence sufficiently established a prima facie case for Rodriguez's retaliation and age discrimination claims for summary judgment purposes. *See Ptomey v. Texas Tech University*, 277 S.W.3d 487, 493 (Tex. App.—Amarillo 2009, pet. denied). As the movant for summary judgment, the burden then shifted to the City to establish, as a matter of law, that it had a legitimate, non-retaliatory and non-discriminatory reason for Rodriguez's termination. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000); *Johnson v. City of Houston*, 203 S.W.3d 7, 12 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The City asserted in its summary judgment motion that the sole reason for Rodriguez's termination was his violation of the City's policy prohibiting sexual harassment in the workplace as concluded by the investigation. Rodriguez challenges the factual findings of the investigation,

particularly the finding that his comment to Bermudez and Mendoza referred to oral sex, and contends summary judgment is improper because the investigation's findings hinge on the credibility of witnesses.

However, at this stage in our *McDonnell Douglas* analysis, "the employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Cothran v. Potter*, 398 F. App'x 71, 73 (5th Cir. 2010); *see Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256–57 (1981). "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the . . . allegation and acted on it in good faith . . . .'" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)); *see also Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 818–19 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Accordingly, Rodriguez's contentions regarding the merits of the employee complaints that prompted the investigation does not defeat summary judgment.

Rodriguez further argues that the City did not act on the employee complaints in good faith because Poteet Mayor Irene Ramos and Matthews possessed a retaliatory animus towards him. To raise a fact issue, Rodriguez must "present evidence that those in charge of making the termination decision did not believe the [employee] allegations, but instead used the allegations as a bad faith pretext to discriminate against" him. *Chandler*, 376 S.W.3d at 820. However, Rodriguez has offered no evidence to suggest that either Ramos or Matthews were "in charge of making the termination decision." The record establishes that both Ramos and Matthews recused themselves from conducting the investigation and that the termination decision was made by a vote of the city council of which Ramos did not participate. *See Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).

Furthermore, Rodriguez has pointed to no evidence in the record suggesting that the city council should not have "reasonably believed" the conclusions reached by the investigator or that the city council acted with anything other than good faith. The city council voted to terminate Rodriguez's employment based on the recommendation from the independent investigator. The report provided to the city council indicated that the investigator interviewed multiple city employees, corroborated each of the conclusions in the report, and ultimately concluded that Rodriguez's conduct constituted multiple violations of the City's anti-harassment policy. Accordingly, the City met its burden of establishing, as a matter of law, a legitimate, non-retaliatory and non-discriminatory reason for Rodriguez's termination.

## C. Pretext

The burden then shifted back to Rodriguez to establish that the City's reason was not true, but was instead merely a pretext for retaliation and age discrimination. *McCoy v. City of Shreveport*, 492 S.W.3d 551, 557 (5th Cir. 2007). To carry this burden, Rodriguez must rebut the City's reason for his termination. *Id.* Rodriguez may establish pretext through evidence of disparate treatment or by showing that the City's reason for his termination is "false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "Under Texas summary judgment law, the nonmoving discrimination plaintiff may respond to this burden-shifting aspect of the summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the employer's summary judgment evidence as failing to prove, as a matter of law, that the given reason for termination was a legitimate, nondiscriminatory reason for termination." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 328–29 (Tex. App.—Texarkana 2008, pet. denied) (citing *Willrich*, 28 S.W.3d at 24).

Rodriguez argues that the City's reason for termination was a pretext for retaliation and age discrimination because (1) he was treated differently than a similarly situated employee, (2) the disciplinary action he received was too severe and not consistent with the City's unwritten policy, (3) Ramos told Rodriguez she wished she had "gotten rid of him," (4) Ramos and Matthews were unhappy with Rodriguez because of the cost of the 2009 settlement, and (5) Ramos and Matthews were unhappy with Rodriguez because of the way he handled permit issues. Rodriguez claims this evidence raises a genuine issue of material fact regarding whether the City's reason for termination was a pretext for retaliation. We disagree.

*1. Disparate Treatment Theory*

Rodriguez first contends that the City's reason for terminating him was a pretext for retaliation and age discrimination because another employee violated the sexual harassment policy and received less severe disciplinary action. Rodriguez points to a November 2009 incident where Ramos verbally counseled Bermudez after one of Bermudez's subordinates, William Gonzalez, complained about comments Bermudez made at the home of Gonzalez's mother concerning Gonzalez's wife. A copy of the complaint is not in the record, but Rodriguez describes the complaint as alleging that Bermudez sexually harassed Gonzalez by "talking real bad about [Gonzalez's] wife." Rodriguez provided the complaint to Ramos and a meeting was held between Ramos, Rodriguez, Bermudez, and Gonzalez. Following the meeting, Ramos verbally admonished Bermudez, but took no further action.

To establish disparate treatment, Rodriguez must demonstrate that he and Bermudez were "similarly situated" employees and that Bermudez was treated more favorably under "nearly identical circumstances." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). Rodriguez and Bermudez must be similarly situated in "all material respects, including similar standards, supervisors, and

conduct." *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex. 2005). Rodriguez and Bermudez are not "nearly identical" if they have "different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records . . . ." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008).

Rodriguez and Bermudez are not "similarly situated" in several respects. First, Bermudez's supervisor was Rodriguez at the time of Gonzalez's complaint and Rodriguez's supervisor was Matthews at the time of his termination. Additionally, different decision-makers were involved in the two incidents. The decision to only verbally counsel Bermudez and not pursue a formal investigation was made by Ramos. The decision to terminate Rodriguez was made by the city council and the decision to pursue a formal investigation was made by Matthews. *See Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 379 (5th Cir. 2013) (plaintiff's subordinate who was also a manager not a valid comparator); *see also Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (plaintiff's supervisor not a valid comparator); *see also Amezquita v. Beneficial Texas, Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008) (same).

Second, Rodriguez and Bermudez were not similarly situated because the disciplinary issues concerning the two employees were not of "comparable seriousness." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 261 (5th Cir. 2009) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 (1976)). The complaint against Bermudez involved a single comment made by Bermudez outside of the workplace. Taking Rodriguez's allegations as true, Rodriguez only offered evidence establishing the comment was vaguely "sexual" in nature. On the other hand, the summary judgment evidence established the complaint against Rodriguez involved multiple complainants alleging a pattern of flagrant policy violations which the investigator ultimately determined to constitute a hostile work environment. The investigator recommended Rodriguez's termination because of the legal liability his actions created for the City. Based on this record, the

complaint against Rodriguez concerned conduct that was more serious than the conduct giving rise to the complaint against Bermudez. *See Reyes*, 272 S.W.3d at 594–95 (citing *Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 213 (5th Cir. 2004)).

Third, Bermudez and Rodriguez were not similarly situated because they did not hold comparable positions. Rodriguez held the title of Director of Public Works and reported directly to the city administrator. Bermudez held the title of Wastewater Superintendent and reported directly to Rodriguez. Although Bermudez supervised employees, his position was not a director-level position that answered directly to the city administrator. For these reasons, the record established that Rodriguez and Bermudez were not similarly situated.

Rodriguez further claims that disparate treatment is shown in other instances where the City followed an unwritten policy of providing an informal counseling or verbal warning for first-time policy violations. The City's written policy states that the City has a "zero-tolerance" for all forms of harassment, including sexual harassment and "unwelcome verbal or physical conduct that results in a hostile work environment." The policy further states "harassment in any manner or form will not be accepted and is expressly prohibited and considered misconduct and the basis for immediate personnel action, up to including discharge." The policy vests an employee's supervisor or the City Administrator with determining, "after appropriate investigation," whether the policy has been violated.

The only evidence Rodriguez offered to support the existence of an unwritten policy in favor of informal counseling or verbal warnings involved instances where Rodriguez decided to verbally counsel his own subordinates for various forms of misconduct, rather than pursue a more formal investigation. However, Rodriguez acknowledged that he should have taken further action but failed to do so because he was too busy with other work. Rather than establishing the existence of an unwritten policy requiring the issuance of a verbal warning, Rodriguez's own decision to

verbally warn his subordinates simply adheres to the City's written anti-harassment policy which permitted a supervisor to determine what level of investigation was appropriate. In accordance with the written policy, Matthews determined the complaints against Rodriguez warranted a more formal investigation. Rodriguez has not offered evidence to establish that he was treated inconsistently with the City's policy or common practice. Accordingly, Rodriguez has not offered evidence to raise a genuine issue of material fact regarding his disparate treatment theory of pretext.

### 2. *Other Evidence of Retaliatory and Discriminatory Animus*

Rodriguez contends that a comment made by Ramos several weeks before his termination raises a fact issue regarding Ramos's retaliatory and discriminatory animus. Ramos made the alleged comment during a meeting between Ramos, Rodriguez, and Matthews concerning Rodriguez's handling of permit issues. Ramos allegedly told Rodriguez, "I should have gotten rid of you, Adolfo, when Sean Pate was the administrator." In order for a statement or remark to serve as evidence of discrimination, it must be "(1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue." *Reyes*, 272 S.W.3d at 593. "Discriminatory animus by a person other than the decision-maker may be imputed to an employer if evidence indicates that the person in question possessed leverage or exerted influence over the decision-maker." *Id.*

Rodriguez concedes that Ramos was not "an individual with authority over the employment decision," but claims Ramos "imputed her dislike and animus to Matthews" during the meeting in which Ramos allegedly made the comment. However, Rodriguez has not established Matthews was an individual with authority over the employment decision. The record established that the decision to terminate Rodriguez was made by the city council following a

recommendation from the independent investigator. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 223 (5th Cir. 2001) (comments made by non-decision maker not probative of discrimination); *see also Patel v. Midland Memorial Hosp. & Med. Ctr.*, 298 F.3d 333, 344 (5th Cir. 2002) (comments made by individual who did not vote on the decision to discipline plaintiff not probative of discrimination). Even assuming, *arguendo*, that Matthews possessed some authority over the decision because Matthews decided to initiate a formal investigation, Rodriguez has offered no evidence to suggest that any animus of Ramos was imputed to Matthews or that Ramos possessed leverage or exerted influence over either Matthews or the city council.

Moreover, the comment itself is not probative of a retaliatory animus because it is not causally related to Rodriguez's protected class as someone who engaged in protected activity. Ramos allegedly told Rodriguez that she wished she had "gotten rid" of him during Sean Pate's tenure as city administrator. Pate was succeeded by Pete Maldonado who was succeeded by Matthews. Rodriguez filed his initial charge of age discrimination during Maldonado's tenure as city administrator. Thus, Ramos's desire to terminate Rodriguez during Pate's tenure was before he filed the age discrimination charge and could not be related to his age discrimination lawsuit. *See Wallace*, 271 F.3d at 224. Therefore, Rodriguez has failed to raise a fact issue that Ramos's comment established that the City's reason for termination was a pretext.

Rodriguez also alleges that Ramos possessed retaliatory and discriminatory animus resulting from ongoing family issues and because she disagreed with his handling of permit issues. Rodriguez also points to Ramos's comment in her deposition that Rodriguez's settlement did not "sit well" with her when she was a member of the city council. As discussed, Ramos was not the decision-maker and Rodriguez has offered no evidence to suggest that she exerted influence over the decision-maker. Moreover, any animus arising from the permit or family issues is unrelated to Rodriguez's protected statuses and therefore is not probative of retaliation or age discrimination.

*D. Conclusion*

The City's legitimate, non-retaliatory and non-discriminatory reason for Rodriguez's termination conclusively negated his retaliation and age discrimination claims. Rodriguez has failed to raise a genuine issue of material fact rebutting the City's articulated reason. Accordingly, the City was entitled to summary judgment.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice